UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>) Criminal No. 04-10066-001-MEL<br>JAMIE EDELKIND, )<br>)<br>      defendant. )<br>) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
RENEWED MOTION FOR JUDGMENT OF ACQUITTAL**

Defendant Jamie Edelkind has moved, pursuant to Federal Rule of Criminal Procedure 29(c), for judgments of acquittal notwithstanding the jury's guilty verdicts on each of the four counts of bank fraud in this case. He argues that the trial evidence was insufficient, as a matter of law, to support his conviction. Edelkind contends that he entitled to a judgment of acquittal because there is no evidence that America's Moneyline, Inc., Countrywide Home Loans, Inc. and Fairmont Funding Ltd. were "financial institutions" as that term is defined in Title 18, United States Code, Section 20(1) (i.e., that they are not federally insured).

The United States opposes Edelkind's motion. As set forth below, the government was not required to prove that any of these institutions was a federally insured financial institution within the meaning of 18 U.S.C. § 20(1).

**I.     The United States Was Not Required to Show That
         America's Moneyline or Countrywide Home Loans
         Were "Financial Institutions" as Defined in 18 U.S.C. § 20.**

The Second Superceding Information (the "Information") charges Edelkind with four counts of bank fraud in violation of 18 U.S.C. § 1344. In Count One he is charged with defrauding South Shore Savings Bank, in Count Two with defrauding Wells Fargo, N.A., in Count Three with defrauding Washington Mutual Bank, F.A., and in Count Four with defrauding Lehman Brothers Bank, FSB ("Lehman Brothers"). There is no dispute that each of these four

institutions, South Shore Savings Bank, Wells Fargo, N.A., Washington Mutual Bank, F.A. and Lehman Brothers, is a federally insured financial institution.

Edelkind's conduct in obtaining mortgage loans from America's Moneyline, Inc. and Countrywide Home Loans, Inc. is described in the Information as part of his overarching fraudulent scheme to defraud financial institutions by repeatedly rolling-over his accumulated debts into ever-larger loans. There is, however, no suggestion in the Information that either America's Moneyline, Inc. or Countrywide Home Loans, Inc. was a federally insured financial institution. Nor was the government ever required to prove that those institutions were "financial institutions" as the term is defined in 18 U.S.C. § 20(1). The United States charged in each count of the Information, and proved at trial, that Edelkind executed a scheme to defraud to each of the federally insured financial institutions enumerated in Counts One through Four. No more was required to satisfy the elements of the charged offenses.

**II.     The United States Was Not Required to Prove That
         Fairmont Was a "Financial Institution"as Defined in 18 U.S.C. § 20.**

Edelkind argues in particular that the government failed to offer sufficient evidence to support his conviction on Count Four of the Information. Edelkind does not dispute that Lehman Brothers, the financial institution identified as the victim of Count Four, was a "financial institution" as defined in Section 20. Rather, Edelkind suggests that, because the actual loan closing was handled by Fairmont Funding, Ltd. ("Fairmont") a non-bank lender which "table-funded" the loan, there is insufficient evidence to show that a federally insured financial institution was a victim of his fraud.

In support of his argument, Edelkind cites the First Circuit's decision in United States v. Brandon, 17 F.3d 409, 426 n.14 (1st Cir. 1994). His contentions, however, are belied by the facts and the reasoning recounted in that decision.

Specifically, Edelkind quotes the following sentence from the Brandon decision to support his position: "it is also unnecessary for the government to prove that a defendant knows

which particular bank will be victimized by his fraud as long as it is established that a defendant knows that *a* financial institution will be defrauded." Renewed Motion for Judgment of Acquittal, 1 (quoting <u>Brandon</u>, 17 F.3d at 426). Edelkind contends that the use of the term "financial institution" in this sentence should be understood, not in its vernacular sense, but as a term of art. He argues that this term must mean a <u>federally insured or chartered</u> institution since the term "financial institution" is so defined in 18 U.S.C. § 20.

The short answer to Edelkind's argument is that he has taken a single sentence out of context and missed the unmistakable holding of the <u>Brandon</u> case. The recitation of facts and the reasoning in <u>Brandon</u>, as well as the court's use of the term "financial institution" throughout the decision, make clear that, in the particular sentence on which Edelkind relies, the First Circuit did not use the term "financial institution" to mean only a federally insured or chartered bank.

The <u>Brandon</u> defendants were convicted of bank fraud in connection with a scheme to defraud Bay Loan and Investment Bank, an FDIC insured financial institution. 17 F.3d at 418. The defendants had arranged financing for real estate investors through two mortgage brokerage companies, which, by prior agreement, provided the original mortgages for the buyers and then sold them to Bay Loan. <u>Id.</u> In order to secure approval for their mortgage loans, the defendants in <u>Brandon</u> falsely represented that the buyers made down payments toward their purchases. <u>Id.</u> at 419. On appeal, the defendants argued that their actions did not violate the Bank Fraud statute, because they had not specifically intended to defraud the federally insured bank, Bay Loan.

The defendants in <u>Brandon</u> relied on factual claims that are virtually identical to Edelkind's current contention that there was no evidence he knew any institution other than Fairmont would be defrauded. <u>See id.</u> at 425 ("Defendants claim they were either unaware that Bay Loan existed or else unaware that Bay Loan had a down payment requirement that prohibited the various down payment transactions in which they were involved."). The

3

defendants in Brandon argued

> that the government must prove they knew that the end loans were provided by Bay Loan and not by some other institution, such as Homeowners or East West. In other words, there was no violation of § 1344 because the scheme to defraud was not knowingly targeted at a federally insured financial institution, but instead at the non-federally insured mortgage brokers.

Id. at 425.

The First Circuit rejected the Brandon defendants' arguments, ruling that the defendants possessed the requisite knowledge and intent to support their convictions under 18 U.S.C. § 1344. Id. at 425-28. In so ruling, the First Circuit noted – in the sentence on which Edelkind now relies – that "it is unnecessary for the government to prove that a defendant knows which particular bank will be victimized by his fraud as long as it is established that a defendant knows that *a* financial institution will be defrauded." Id. at 426. To suggest, as Edelkind now does, that this language means only that the defendant need not know which of several federally-insured institutions would be his victim, ignores the critical fact that in Brandon the only alternative victims were "the non-federally insured mortgage brokers." Id. at 425.

That the Court was not using the term "financial institution" in its 18 U.S.C. § 20 sense is thus clear from the factual context, which involved two uninsured mortgage brokerage companies that actually closed the loans and only one insured bank. This conclusion is underscored by the Brandon court's further statement:

> Defendants are essentially seeking to sanitize their fraud by interposing an intermediary or an additional victim between their fraud and the federally insured bank. We reject this attempt to escape the reach of the bank fraud statute. Instead, we find that defendants need not have had the specific intent to defraud Bay Loan so long as they intended to defraud some financial institution. The fact that it should turn out that the <u>financial institution actually defrauded was federally insured</u> is a fortuitous stroke of bad luck for the defendant, but does not make it any less of a federal crime.

Id. at 426 (emphasis added). Since, by definition, all 18 U.S.C. § 20 "financial institutions" are federally insured, it is inescapable that the First Circuit was not using the term in this technical sense. Indeed, the Brandon court expressly identifies the two uninsured mortgage brokers as financial institutions, obviously using the term in its ordinary everyday sense, rather than as a term of art under 18 U.S.C. § 20: "In this case at least, the government did prove the scheme

4

was intended to defraud <u>a financial institution: Homeowners or East West</u>, if not Bay Loan itself."  <u>Id.</u> at 427, n.16 (emphasis added).

Whether Fairmont's role is described as that of a lender or as that of a broker, makes no difference and does not distinguish this case from <u>Brandon</u>.  Indeed, the mortgage brokers in <u>Brandon</u> actually funded the loans before selling them to Bay Loan, just as Fairmont funded the loan to Linda Edelkind before selling it to Lehman Brothers.  <u>See</u> <u>Brandon</u>, 17 F.3d at 419 ("By prior agreement, Homeowners and East West provided the original mortgages for the buyers and then sold them to Bay Loan.").  That Edelkind may have had a different victim in mind is irrelevant; Lehman Brothers was victimized and exposed to a risk of loss by Edelkind's scheme.  As the First Circuit noted in <u>Brandon</u>, "Congress intended to criminalize bank frauds that harm federally insured banks, not just bank frauds directed specifically toward federally insured banks."  <u>Id.</u> at 426.

It makes no difference that Edelkind's fraudulent representations were ultimately passed along from Fairmont to Lehman Brothers, which agreed (before the loan closed) that it would purchase the loan when Fairmont closed it.  The evidence at trial demonstrated that Aurora Loan Servicing, as a subsidiary of Lehman Brothers, reviewed the loan application and supporting documents before the closing and gave its approval based upon Edelkind's false representations regarding Linda Edelkind's employment and income.  At most, the fact that Fairmont – as part of a daisy chain of brokers and lenders – conveyed Edelkind's fraudulent representations to another lender means only that Edelkind consummated his fraud through an intermediary.  This circumstance in no way vitiates either his culpability or the sufficiency of the evidence against him.  <u>See id.</u> at 427 ("[T]he effects of fraudulent actions against one institution are increasingly likely to spill over and detrimentally affect others.  As Congress' main concern in § 1344 was to provide jurisdiction for fraudulent schemes that harmed federally chartered or insured institutions, the increased risks to the institutions should be matched by increased coverage of the statute.").  <u>See</u> <u>generally</u> 18 U.S.C. § 2 (establishing liability "as a principal" whether defendant commits an offense himself or procures or willfully causes another to act).

**CONCLUSION**

For the foregoing reasons, the Court should deny the defendant's Renewed Motion for Judgment of Acquittal.

<br>

Respectfully submitted,
MICHAEL J. SULLIVAN
United States Attorney

By:  /s/ Kristina E. Barclay
KRISTINA E. BARCLAY
PAUL G. LEVENSON
Assistant U.S. Attorneys
United States Courthouse
One Courthouse Way
Suite 9200
Boston, Massachusetts 02210
(617) 748-3371

Dated: March 18, 2005

CERTIFICATE OF SERVICE

I hereby certify that on this day I will cause a true copy of the above document to be served by First Class Mail upon counsel of record for defendant, addressed as follows:

Robert L. Sheketoff, Esq.
1 McKinley Square
Boston, MA 02109

Dated: March 18, 2005

/s/ Kristina E. Barclay
Kristina E. Barclay