**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
-------------------------------------------------------x
United States of America,            :      # 04-CR-
                                            10066 (MEL)

          -against-                  :      June 20, 2005
                                            Calendar

Jamie Edelkind,                      :

                 Defendant.          :
-------------------------------------------------------x
```

**MEMORANDUM OF FAIRMONT FUNDING IN SUPPORT OF ITS CLAIM OF A "LEGAL INTEREST" TO THE FORFEITED PROPERTY IN SUPPORT OF ITS REQUEST FOR AN ORDER OF RESTITUTION, IN SUPPORT OF ITS CONTENTIONS AS TO GUIDELINE SENTENCING CALCULATIONS**

Introduction

  Fairmont Funding Ltd, a New York City based private mortgage lender, submits this memorandum (1) in support of its claim of a "legal interest" to the forfeited property and (2) in support of its contention as a victim as to guideline sentencing calculations, (3) in support of its request of an order of restitution to Fairmont.

  It is Fairmont's position that it is entitled to forfeiture of all of Edelkind's property, or, to phrase it differently, it is entitled to all of

1

the Edelkind property that is subject to forfeiture.

The Court is reminded Fairmont funded the $3,300,000 first mortgage on the property in question in the summer of 2004 and subsequently sold the mortgage in the secondary market to Lehman Brothers and its subsidiary, Aurora, pursuant to a prior master agreement. Now Lehman pursuant to that agreement has demanded that Fairmont repurchase the mortgage. The parties are in negotiation which I anticipate will be lengthy and eventually there may be litigation (in another Court). In the meantime <u>Fairmont</u> and <u>Lehman</u> are <u>in agreement</u>:

(1) the property should be forfeited;

(2) the holder of the mortgage is entitled to <u>all</u> of the forfeiture property;

(3) the government forfeiture is subject to the existing first mortgage and cannot wipe out the first mortgage, whose holders are the victims and are entitled also to restitution;

(4) as <u>no</u> government funds were lost or <u>no</u> government program impaired as a result of Edelkind's misconduct, the government is <u>not</u> entitled to <u>any</u> of the proceeds of the forfeited property;

(5) title to the forfeited property should be held in <u>escrow</u> pending   the resolution of the Fairmont – Lehman dispute;

(6) title to the proceeds of the sale of the property should be held in   <u>escrow</u> pending the resolution of the Fairmont – Lehman dispute;

(7) the United Stated Marshall shall be authorized to maintain – repair – protect the property pending sale and shall have a <u>first lien</u>  for reimbursement on funds spent for maintenance – repair - protection.

### Forfeiture Proceeding

As of now Fairmont Funding has a <u>contingent legal interest</u> in the real estate because the master agreement between Fairmont and Lehman has a repurchase provision upon which Lehman is relying in its demand that Fairmont repurchase the Edelkind mortgage. Fairmont and Lehman are in negotiations. In the meantime, both approve forfeiture proceedings and both approve prompt protection/repair of the property. Until Fairmont and Lehman eventually resolve their differences as to which firm ends up with title to the mortgage, which negotiations (or even litigation) may take considerable time. I propose escrow arrangement to be used as to

their respective interests in the property subject to forfeiture.  <u>United States v. Edmond, 780 F. Supp. 42, 44, 45 (DC, DC, 1992)</u>.

It is our position that upon entry of a <u>final</u> order of forfeiture, the government shall have title <u>subject</u> to the "legal interests" of the mortgage holder who sustained in its entirety the loss.  21 USC 853 (n) (2) – (6).  We are <u>not</u> dealing with government funds lost through the fraud or a government program which was defrauded.  As such the government has <u>no</u> financial interest to recoup – the government has <u>no</u> claim for restitution.  <u>Nor</u> are we dealing with narcotics or other contraband, which is the subject matter of many reported judicial decisions.  The government acted appropriately and well to protect Title 18 of the United States Code and to protect the industry – wide residential mortgage loan market and its financial institutions for which we are grateful.  As the mortgage holder was the <u>sole</u> <u>victim</u> of the fraud, and <u>not</u> the government, and had <u>primary</u> "legal interest" in the property, we assert a claim to the <u>entire</u> forfeiture.  Obviously Fairmont Funding was a <u>bona fide transferee</u> of the mortgage.  21 USC 881 (a) (6) and (7).   The government's lis pendens, recorded in February 2005, is <u>junior</u> to the existing first mortgage on the property, which was <u>earlier</u> recorded in August 2004.  Obviously the indictment

4

was returned <u>after</u> the mortgage was recorded.  Nor did the crime predate the mortgage.

The recent opinion of the district court in <u>United States v. O'Connor</u>, 321 F. Supp.2d 722 (E.D. Virginia, 2004) is most helpful.  It sets forth in detail the forfeiture and restitution proceedings, including the recognition of "legal interests" of third parties.

There were 216 victims of an investment scam (in contrast we have <u>only</u> one).

There was a total loss of funds.  321 F. Supp.2d at 725.

The defendant's residence was forfeited.  321 F. Supp.2d at 726.

Footnote 8 at 321 F. Supp.2d 721, 726 recognizes forfeiture to the government is <u>subject</u> to "bona fide purchasers" <u>and</u> "third parties" with a "vested title or interest" in the property "superior" to that of the <u>defendant</u> (namely, a first mortgage in default as against the defaulting home owner and convicted defendant, who has abandoned the property –

In footnote 9 at pages 726 – 726, the district court implemented the holding of a footnote 8 by "granting'" the petition of a mortgage holder on O'Connor's residence, namely, the Federal Home Loan Mortgage Corporation, a purchaser in the residential secondary

5

market, and recognizing its superior position to that of the government.

Obviously the FHLM stands in the same position as Fairmont and Lehman – a holder of the first mortgage on the forfeited residence of a convicted defendant, with a position superior to that of the government.

The FHLM was not in addition a "victim" of the fraud as was Fairmont and Lehman, who also are entitled to restitution. See footnotes 14 and 15, at pages 729 and also page 730 –

> "use of the forfeited proceeds as partial satisfaction of the restitution order ... properly viewed as the government contends ... as one in favor of the victims of defendant's criminal activity"
> 
> X   X   X
>
> "... the government has a significant interest in the defendant's satisfaction ... of their restitution obligations under the MVRA ..."

The district court has authority to determine the manner and schedule for payment restitution. 321 F. Supp.2d at 730.

Also, Fairmont claims an undivided "legal interest" in the cash proceeds of the mortgage closing (approximately $600,000) and in the post-closing check. We do not believe Lehman can properly assert a claim to the cash or to the check, nor can the government. The cash

6

and the check were always Fairmont's and were conveyed by Fairmont to Edelkind as part of the mortgage transaction. Lehman never received the check or the cash, nor were they entitled to it.

The government's evidentiary presentation at the trial was complete and never even challenged by Edelkind. It was based upon a voluminous paper trail supported by corroborating testimony to identify each document and each transaction. Two witnesses from Fairmont testified as did one from Lehman. The mortgage loan files from Fairmont and from Lehman in its entirety were received into evidence. In summation the government vouched for the credibility of its witnesses and for the documents. As such Judge Lasker's task upon entry of a final forfeiture order does <u>not</u> involve any heavy fact finding. There are <u>no</u> other potential claimants other than Fairmont and Lehman, who eventually will resolve their differences either by negotiations or by litigation (in another Court). Each has <u>standing</u> to assert a claim and participate in ancillary forfeiture proceedings, subject to escrow arrangements, pending resolution which firm eventually has title to the mortgage.

<u>Guidelines Sentencing Calculations</u>

The jury verdict found Edelkind guilty of fraud on each and every

mortgage <u>re</u>financing – not just the Fairmont mortgage.

Edelkind repaid each mortgage loan by <u>fraudulently</u> securing <u>re</u>financing from still another lending institution. He never used his own funds to repay each mortgage and he never used funds secured legitimately to repay each mortgage. Obviously none of the institutions would have funded each loan application if they had been presented with an accurate financial statement as to income and assets.

Each financial institution was always at precarious risk for there never were assurances that Edelkind could fraudulently secure still another refinancing to repay the prior mortgage (except Edelkind's own arrogant attitude that he could successfully dupe each and every lending institution.)

As such each and every refinancing was an <u>intended loss</u>, recognized by the sentencing guidelines in calculating the offense level (base level plus loss). USSG Section 2B1.1(b) (see application note (3), (b) (i) (A) (1).

Each and every home equity line of credit was fraudulent for each lender thought it was subordinate to a first mortgage which was safely collateralized. Again each equity line of credit was at

8

substantial risk for repayment depended upon Edelkind fraudulently securing still another refinancing.

The intended loss when greater than the actual loss is the proper measure for offense level calculation. <u>United States v. Guyon</u>, 27 F3d 723, 730 (CA-1, 1994); <u>United States v. Resurecciun</u>, 978 F2d 759, 762 (CA- 1, 1992), <u>United States v. Hernandez</u>, 160 F3d 661, 666 (CA-11 1998).

The sum total of <u>all</u> mortgage refinancing <u>and</u> <u>all</u> equity lines of credit is the proper basis of the <u>intended loss</u>. <u>United States v. Egemonye</u>,
62 F3d 425, 428 – 429 (CA -1, 1995).

A reasonable estimate of intended loss suffices. <u>United States v. Egemonye</u>, *supra*.

<u>I estimate intended loss in excess of $7,000,000</u>.

In addition by abandonment Edelkind has caused substantial damage and loss to a residence which trial testimony described as "beautiful".

Furthermore Edelkind may have caused irreparable loss to Fairmont Funding's very existence – its cash position and its capital reserves may be substantially damaged so that it can no longer

9

secure the bank lines of credit which it requires to continuously fund mortgages (prior to resale in the secondary market). See USCG Section 2B1.1(b) (13(B).

If use of <u>special skills</u> is still an appropriate calculation factor, I ask that it be used to increase the offense level. Certainly, the jury verdict and the trial testimony sustains the finding that Edelkind has special talents developed over the years in stealing from banks. Using his wife as a pawn rather than himself; using the mortgage loan program that did not require verification of income; fabricating documents to support the loan application; using an out-of-state lending institution and an out-of-state mortgage broker neither of whom knew the community; initially applying for a $3,000,000 loan and then at the last moment, increasing the request to $3,300,000; submitting false data to Dun and Bradstreet; submitting false appraisal reports; intimidating loan officers.

Edelkind processed and closed the Fairmont mortgage <u>after</u> he had already pled guilty to a pending mortgage fraud indictment in another district <u>and</u> sentencing guidelines provides for an increment in offense level.

Also Edelkind callously used his wife as an instrument for his

fraudulent pattern of ripping off banks.

Edelkind should receive a sentence at the high end of the appropriate sentencing range.

If the government seeks upward departure, I support their request.

The sentence to be imposed should be <u>consecutive</u> to the sentence he is now serving. Edelkind had the opportunity in the prior case to enter into a Rule 20 global settlement. Instead he rejected the chance, and promptly proceeded to do one more ripoff – against Fairmont Funding. The Fairmont refinancing gave his wife and children the opportunity to live comfortably in Norway on Fairmont's money while he served his prison sentence apparently free of daily worry as to their financial situation.

## Threat to Fairmont's Continued Existence

It is too early to tell whether or not Fairmont Funding has been substantially crippled because of loss of capital and cash reserves. If Fairmont is required to reimburse Lehman, its capital and cash position will be impaired and its ability to maintain existing lines of credit (necessary to fund loan applications prior to resale in the secondary market) may be impaired.

Obviously Edelkind was indifferent to Fairmont's financial position. He acted brazenly and selfishly knowing full well that in all respects the mortgage refinancing was a fraud and sham. Edelkind should be held responsible for the precarious situation he has caused Fairmont – perhaps an upward departure is appropriate for at this moment the loss may be estimated but cannot be calculated in any other way.

We have heard nothing good at the trial about Edelkind - <u>not</u> even from the defense. For a relatively young man he has had two prior bankruptcy – obviously to wipe out loans and advances he received at the expense of innocent creditors who were unaware of his modus operandi and a prior conviction for mortgage fraud.

Apparently his entire life has been spent securing other people's money (OPM) without concern to repayment – ripping off banks, milking property, abusing innocent creditors.

Edelkind's abandonment of the family home – no protection, no security – shows total disregard for a beautiful home and disregard for the

ability of the mortgage holder to recoup its loss. It showed he used

the property primarily as a tool to cheat banks and not as a home for his family.

Edelkind committed the Fairmont fraud <u>after</u> pleading guilty to the pending mortgage fraud indictment in another district. Obviously the plea and the sentence had no rehabilitative effect upon him – he viewed it merely as a cost of doing business – to him a <u>short</u> prison sentence was worth the substantial benefits of his fraudulent schemes.

Obviously Edelkind has demonstrated he requires a lengthy sentence in order to make an impact – anything less will see him promptly returning to the mortgage market or other aspects of the financial markets.

I propose the maximum period of supervision in addition to the prison sentence.

<u>Restitution and other banking protections</u>

I propose a $3,300,000 judgment of restitution to the holder of the mortgage – of course with credit if and when the Edelkind home is sold and the mortgage holder partially reimbursed. A bank fraud conviction warrants restitution. <u>United States v. Abbey,</u> 288 F3d 515, 519 (CA- 2, 2002) and <u>United States v. Rhodes</u>, 330 F3d 949, 953 (CA-

7, 2003).

<u>Forfeiture</u> wipes out the defendant's interests; <u>it cannot wipe out the interest of a first mortgage holder</u>. The government takes title to the defendant's property <u>subject</u> to the existing first mortgage. Edelkind cannot lose what he does <u>not</u> have, namely, the portion of his home subject to the mortgage held by Fairmont/Lehman (unfortunately recent appraisals show no equity in the house – its market value is less than $3.3 M.

I propose as a condition to supervised release that he be forbidden to apply for any institutional loan or credit not just in his own name but in the name of anyone else who may act as his nominee.

Edelkind is a real menace to the mortgage markets and to the financial markets. The markets require protection from Edelkind – that he be confined for many years.

The trial testimony and jury verdict painted a portrait of a man whose life was focused on fraud, deception, schemes, lies, larceny.

## Conclusion

Fairmont Funding's position is well supported by the trial testimony, the trial exhibits, accepted mortgage practices, a duly recorded mortgage, case law and statutory law, as set forth in this memorandum, especially <u>United States v. O'Connor</u>. 321 F. Supp. 2d 722 (ED. Va. 2004).

May   2005

Respectfully submitted,

*[signature]*

H. Elliot Wales
   Attorney for Fairmont
   Funding Ltd
26 Broadway, Floor 19
New York, NY  10004-1801
Phone (212) 980-2160
Fax (212) 344-0991
Email – elliotwales@aol.com

To:   All Counsel