UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 04-10066-MEL |
| ) | |
| JAMIE EDELKIND, ) | |
| defendant. ) | |

UNITED STATES' CONSOLIDATED OPPOSITION TO DEFENDANT'S
SECOND MOTION FOR ACQUITTAL ON COUNT FOUR
AND MOTION FOR ARREST OF JUDGMENT

The United States, by its undersigned counsel, opposes two motions filed by defendant Edelkind in a last ditch effort to side-track the sentencing in this case. Those two motions are captioned, "Defendant Jamie Edelkind's Second Renewed Motion for Judgment of Acquittal with respect to Count Four of the Second Superseding Information" and "Defendant Jamie Edelkind's (1) Motion for Arrest of Judgment on the ground that the Second Supersending Information Fails to Charge an Offense and (2) Notice to the Court of Other Defects and Variances Affecting Substantial Rights and Warranting Dismissal of Second Superseding Information." For purposes of this opposition, those motions will be referred to, respectively, as "Second Motion for Acquittal" and "Motion for Arrest of Judgment."

As set forth below, these motions are without merit. Indeed, with one exception,[1] they are time-barred.

---

[1] A claim that the information does not charge an offense may be raised at any time. Fed. R. Crim. P. 12(b)(3)(B). Thus Edelkind's attempt to raise such a claim is not time-barred. However, as detailed below, Edelkind's argument is without merit.

1.      Defendant's Motions Are Time-Barred

Except for Edelkind's claim that the Information fails to charge an offense, all of his eleventh-hour attempts to raise legal defenses are time-barred.

Whether styled as a motion for judgment of acquittal, a motion for new trial, or a motion to arrest judgment, the submission of a post-trial motion to reverse or undo a jury's verdict of guilt is governed by a strict seven-day time limitation.[2] See Fed. R. Crim. P. 29(c)(1); Fed. R. Crim. P. 32(b)(2); Fed. R. Crim. P. 34(b). Moreover, the rules are explicit that "[t]he court may not extend the time to take any action under Rules 29, 33, 34, and 35, except as stated in those rules." Fed. R. Crim. P. 45(b)(2). As the Supreme Court has noted:

> These Rules are plain and unambiguous. If, as in this case, a guilty verdict is returned, a motion for judgment of acquittal must be filed, either within seven days of the jury's discharge, or within an extended period fixed by the court during that 7-day period. There is simply no room in the text of Rules 29 and 45(b) for the granting of an untimely postverdict motion for judgment of acquittal, regardless of whether the motion is accompanied by a claim of legal innocence, is filed before sentencing, or was filed late because of attorney error.

Carlisle v. United States, 517 U.S. 416, 421 (1996).

2.      Proof of Fraud Upon a Financial Institution

In his Second Motion for Acquittal, Edelkind attempts to reprise the arguments he made in his original motion for acquittal. While he cites additional authorities, none of the cases he cites undermines the clear holding of the controlling precedent, United States v. Brandon, 17 F.3d 409 (1st Cir. 1994). The United States' position with respect to the applicable law is set forth in its previous submission to the Court, Government's Opposition to Defendant's Renewed Motion for Judgment of Acquittal, March 18, 2005. Without repeating the legal argument set

---

[2]      Defendant's counsel acknowledges that Fed. R. Crim. P. 34(b) sets a 7-day time limit in which to file a motion to arrest judgment. Motion for Arrest of Judgment at 2, n.1.

forth in that submission, it remains the United States' position that it makes no difference – as a matter of law – whether Fairmont Funding Ltd. was a "financial institution" as that term is defined in 18 U.S.C. § 20(1). The evidence at trial showed that Fairmont's intention, from the outset, was to sell the loan to Lehman Brothers. Aurora Loan Servicing, as a subsidiary of Lehman Brothers, reviewed the loan application and supporting documents before the closing and gave its provisional approval based upon the defendant's false representations regarding Linda Edelkind's employment and income. That Fairmont conveyed Edelkind's fraudulent representations to another lender means only that Edelkind consummated his fraud through an intermediary. Brandon is unmistakable in its holding that the mere interposition of an uninsured lending institution is insufficient to insulate a defendant from liability for bank fraud. 17 F.3d at 426-27.

To the extent that it raises anything new, Edelkind's Second Motion for Acquittal relies on assertions about the evidence which are flatly mistaken. In particular, Edelkind's ignores the parties' stipulation, which was read into evidence:

> The parties stipulate that Lehman Brothers Bank bought the Linda Edelkind loan and mortgage on or after September 28, 2004. The parties further stipulate that only one payment was made on that loan, a payment in the amount of $29,218.21, paid by check from Fleet Bank account No. 9444528261 in the name of Linda Edelkind by check dated October 4, 2004, payable to Fairmont Funding Ltd.

Excerpt from Transcript, Mar. 4, 2005. The stipulation, on its face, rebuts Edelkind's suggestion that there was any deficiency in the evidence that a federally insured bank, namely Lehman Brothers, bought the loan and was thus directly harmed by Edelkind's bank fraud.

Edelkind's current submission misses another key point as well. In focusing his argument on the bare fact that Fairmont is not itself a federally insured bank, Edelkind fails to note that the information charges, and the evidence established, that Edelkind's fraud scheme

continued beyond the date of the loan closing. In scheming to move loan proceeds off-shore, beyond the reach of any efforts by the bank to attach or recover the proceeds of its loan, Edelkind continued his execution of the fraud well after Lehman Brothers had purchased the loan. Count Four of the information expressly charges that Edelkind committed bank fraud "by abetting Linda Edelkind's removal of loan proceeds from the United States and her abandonment of the mortgaged property, in connection with a loan in the name of Linda Edelkind, originated by Fairmont Funding LTD and subsequently assigned to Lehman Brothers Bank, FSB." Moreover, the timing and circumstances of these activities is detailed in the information:

> 52. Between August 31, 2004 and October 18, 2004, approximately $273,000 was wire transferred from the 8261 Account to Norway.
>
> 53. On or about October 18, 2004, Linda Edelkind and her children moved to Norway.
>
> 54. Between October 18, 2004 and December 15, 2004, approximately $34,000 was withdrawn from the 8261 Account through ATMs located in Norway.

Edelkind was charged with a bank fraud that culminated in Edelkind's wife absconding to Norway and taking with her cash that represented a portion of the proceeds of the fraudulently procured loan. This portion of the scheme continued after the loan had been purchased by the federally insured bank. Having been shown at trial to have abetted precisely the conduct that was charged, Edelkind is in no position to complain about the sufficiency of the linkage between his fraud and its federally insured victim.

In sum, Edelkind is wrong as a matter of law in his claim that he was somehow insulated from committing bank fraud because he didn't know Fairmont was arranging to sell the loan to Lehman Brothers. He is also wrong, as a matter of fact, in his failure to recognize that the

charged, and proven, criminal conduct in this case continued after Lehman Brothers had acquired the loan.

      3.      <u>The Absence of the Word "Materiality" In the Indictment</u>

In an effort to circumvent the 7-day time-bar, Defendant invokes Fed. R. Crim. P. 12(b)(3)(B), which provides that "at any time while the case is pending, the court may hear a claim that the indictment or information fails . . . to state an offense."[3]  Specifically, defendant contends that the Indictment in this case is deficient because it does not use the word "material" in detailing and describing the bank fraud scheme at issue in this case.  Motion for Arrest of Judgment at 1-3.

While it is true that a facial challenge to an indictment is not subject to the 7-day time bar, Edelkind's challenge is without substance, particularly in light of the liberal standards of construction applicable to challenges that are raised after a verdict has already been returned:

> It is well-established that the failure of an indictment to state an offense is a fatal defect that may be raised at any time. Fed.R.Crim.P. 12(b).  Nonetheless, the countervailing interest in judicial efficiency requires that tardily challenged indictments be construed liberally in favor of validity.

<u>United States v. Watkins</u>, 709 F.2d 475, 478 n.2 (7th Cir.1983) (citing <u>United States v. Pheaster</u>, 544 F.2d 353 (9th Cir.1976)).  As the Fifth Circuit has noted:

---

[3]    Edelkind suggests that he may also seek to challenge the sufficiency of the evidence as to materiality or the legal appropriateness of the jury charge on the issue.  Motion to Arrest Judgment at 3-4.  Such arguments plainly would <u>not</u> fall within the ambit of Rule 12(b)(3)(B)'s narrow exception to the 7-day rule for claims that an information "fails to state an offense."  In any event, there is nothing in the record to support a challenge to the sufficiency of the evidence or the propriety of the jury instructions.  The issue of materiality was amply addressed in the trial testimony.  Indeed, the major thrust of defendant's cross-examination of witnesses at trial was to suggest that the purported value of the collateral for the fraudulently procured loans was so great as to render immaterial any false statements about the borrower's income and assets.  The jury instructions, in turn, properly identified materiality as a required element of the offense.

> [W]here, as here, "the defendant demonstrates no prejudice and waits for appeal to assert his challenge, an appellate court will read the indictment liberally." . . . Under such circumstances, an indictment will be sufficient "unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted."

United States v. Wilson, 884 F.2d 174, 179 (5th Cir. 1989) (citations omitted). An indictment not challenged before trial will be upheld "unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted." United States v. Knippenberg, 502 F.2d 1056, 1061 (7th Cir.1974). See also United States v. Stewart, 151 F.Supp.2d 572, 583 (E.D. Pa. 2001) ("When a challenge to the indictment's sufficiency is raised for the first time after trial, as is the case here, we are to 'construe the indictment liberally in favor of validity.'") (quoting United States v. Cefaratti, 221 F.3d 502, 507 (3d Cir. 2000)).

The validity of an indictment is to be tested by a reading of the indictment as a whole. United States v. Debrow, 346 U.S. 374, 376 (1953); United States v. Willis, 583 F.2d 203, 207 (5th Cir.1978). An indictment is sufficient if it, first, alleges the elements of the offense charged and fairly informs a defendant of the charge against him or her, and, second, enables the defendant to plead an acquittal or conviction in bar of future prosecutions. Hamling v. United States, 418 U.S. 87, 117 (1974). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence [sic] intended to be punished.'" Id., quoted in United States v. Cianci, 378 F.3d 71, 81 (1st Cir. 2004).

The information in this case details the manner and means by which Edelkind committed his offenses. The particular false statements by which Edelkind accomplished his scheme are specified in the Indictment. Given that the false statements, as alleged, were patently material

6

(lies about the income and assets of the putative borrower), there can be no dispute that Edelkind was fully informed by the Information that he was charged with making material deceits. If an indictment alleges misrepresentations that can only be characterized as material, the indictment is sufficient irrespective of whether the word "material" is explicitly used. see United States v. Caldwell, 302 F.3d 399, 409 (5th Cir. 2002) ("[I]f the facts alleged in the indictment warrant an inference [of] material[ity], the indictment is not fatally insufficient for its failure to allege materiality *in haec verba*.") (internal citations omitted); United States v. Fernandez, 282 F.3d 500, 508-09 (7th Cir. 2002) (indictment's allegations adequately encompassed the concept of materiality); United States v. Richards, 204 F.3d 177, 191-93 (5th Cir. 2000) (same) (*citing* United States v. McGough, 510 F.2d 598, 601-03 (5th Cir. 1975)); Stewart, 151 F.Supp.2d at 584; United States v. Noorlun, 2001 WL 1789408, at *1 (D.N.D. 2001).[4]

As the United States noted in both its Trial Brief to this Court and in its submission of proposed jury instructions, the Supreme Court in Neder v. United States, 527 U.S. 1 (1999), ruled that the terms "defraud" and "false pretenses," as used in the mail fraud, wire fraud and bank fraud statutes, implicitly include a requirement that the government prove deceit as to a material matter. See United States Trial Memorandum, Feb. 14, 2005, at 2-3; United States' Request for Jury Instructions, Feb. 14, 2005, at 12. The Court noted in Neder:

> "' "[F]alse pretenses, a false representation, or actual frau[d]" carry the acquired meaning of terms of art. They are common-law terms, and ... they imply elements that the common law has defined them to include. ... Congress could have

---

[4] Applying similar reasoning, the First Circuit has several times deemed as "harmless error" a district court's failure to explicitly instruct a jury on materiality, on the ground that upon review of the evidence, no jury could reasonably have found that the false representations made were not material. E.g., United States v. Blastos, 258 F.3d 25, 29 (1st Cir. 2001); United States v. Benjamin, 252 F.3d 1, 9-10 (1st Cir. 2001); United States v. Colon-Munoz, 192 F.3d 210, 221-22 (1st Cir. 1999).

>enumerated their elements, but Congress's contrary drafting choice did not deprive them of a significance richer than the bare statement of their terms.'"

Neder v. United States, 527 U.S. at 23 (quoting Field v. Mans, 516 U.S. 59, 69 (1995)). Neder noted the "well-established rule of construction that '"[w]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.'" 527 U.S. at 21 (internal citations omitted). Based upon this rule of construction, and upon its review of the history of mail fraud statute, the Court accepted Neder's contention "that 'defraud' is just such a term, and that Congress implicitly incorporated its common-law meaning, including its requirement of materiality, into the statutes at issue." Id. at 22.

In contending that the information was deficient, Edelkind invites this Court to stand Neder on its head. Starting from the conclusion in Neder that materiality is an element of bank fraud, Edelkind suggests that the information in this case was insufficient because it uses the words "defraud" and "false pretenses" in reciting the offenses charged, rather than using the word "materiality." Unless Neder is understood as an act of pure judicial fiat, importing ex nihilo a materiality requirement into a statute that had previously lacked any such element, the Neder Court's conclusion that the terms "defraud" and "false pretenses" encompass the concept of materiality should be conclusive. Under Neder, the concept of materiality is implicit in the terms "defraud" and "false pretenses." See also United States v. Smith, 223 F.3d 554, 572 (7th Cir. 2000) ("'[I]n determining whether an essential element of the crime has been omitted from the indictment, courts will not insist that any particular word or phrase be used.'") (quoting United States v. Garcia-Geronimo, 663 F.2d 738, 742 (7th Cir.1981)). By tracking the language defining the offense, as enacted by Congress, the information necessarily incorporated the

meaning of the statutory terms "defraud" and "false pretenses," as explicated by the Supreme Court.

The precise argument that Edelkind now raises has been rejected by the Fifth Circuit in United States v. Caldwell, 302 F.3d at 409, by the Seventh Circuit in United States v. Fernandez, 282 F.3d 500, 508-09 (7th Cir. 2002), and by several district courts, including a published opinion United States v. Stewart, 151 F.Supp.2d 572 (E.D. Pa. 2001). In the latter, the court noted, "[b]ecause the word 'fraudulent' clearly encompasses the notion of materiality, the superseding indictment cannot be considered deficient." 151 F.Supp.2d at 584.[5]

In support of his position, Edelkind cites a decision of the Ninth Circuit in United States v. Omer, 395 F.3d 1087, 1089 (9th Cir. 2005). That per curiam decision does appear to adopt his position, albeit without analysis or pertinent citation. It should be noted, moreover, that the procedural posture in Omer was quite different from the present case in that the prosecution had contested the inclusion of materiality of falsehood as an element of the offense charged and the issue was never submitted to the jury. Omer is neither controlling nor persuasive. On the contrary, it is the United States' position that – in this regard – the Omer decision is flatly incorrect. It is contrary not only to the decisions of other courts but also to the logic of Neder, as discussed above.

---

[5] An indictment that charges a legal term of art "sufficiently charges the component parts of the term." United States v. Wicks, 187 F.3d 426, 429 (4th Cir.1999). See also Hamling, 418 U.S. at 118-19 (indictment alleging material was "obscene" was adequate although it did not set forth the components of the obscenity test); United States v. Kovach, 208 F.3d 1215, 1219 (10th Cir.2000) (indictment that alleged defendant possessed forged security of an "organization" adequately alleged interstate commerce element where statutory definition of "organization" expressly incorporated that element); United States v. Cochran, 17 F.3d 56, 61 (3d Cir. 1994) ("[B]ecause we interpret the statute to embody a knowledge requirement on its face, the indictment in the words of Section 2252 alleged all the elements necessary for prosecution."); Watkins, 709 F.2d at 478 (absence of the word "knowingly" did not render indictment fatally defective).

Even if Edelkind were correct in claiming that the government was required to use the word "materiality" in its bank fraud charge, his claim at this stage of the proceedings is wholly unavailing. Any error would be subject to the "harmless error" analysis and there was no conceivable prejudice to Edelkind from the absence of the word "materiality" from the information in this case. On the contrary, the United States made clear from the outset that it was required to, and intended to, prove materiality as an element of the charged offenses. See United States' Trial Memorandum, Feb. 14, 2005, at 2-3. Likewise, the jury instructions in this case expressly required the jury to find, beyond a reasonable doubt, that Edelkind's fraud was accomplished through material misrepresentations. If there was any error, it was harmless beyond a reasonable doubt.[6]

The First Circuit has commented on this point in United States v. Mojica-Baez, 229 F.3d 292 (1st Cir. 2000), which Edelkind's counsel, commendably, cites to this Court:

> We think we are compelled by the Supreme Court's decision in Neder to subject the indictment error in this case to plain error review.
>
> * * *
>
> It is true . . . that Neder was explicitly concerned with the failure to submit an element of an offense to the petit jury at trial and not with the failure to present an element to the grand jury to secure an indictment. . . . But we do not think that distinction is significant where the indictment provided the defendant with fair notice of the charges against him.
>
> * * *
>
> [W]e see no reason why harmless error review should not apply to the failure to include an element in an indictment that otherwise provided the defendants with fair notice of the charges against them. Cf. United States v. Jackson, 214 F.3d 687, 690 (6th Cir.2000) (suggesting that harmless error analysis might be appropriate where an element of an offense was not specifically included in the indictment or submitted to the jury).

---

[6] The test for harmless error is straightforward. "Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(a).

229 F.3d at 311 (internal citation omitted).

By the same token, there is no substance to Edelkind's protestations that the timing of the Second Superseding Indictment somehow prejudiced his ability to raise a timely objection to the wording the fraud charges. See Motion to Arrest Judgment at 2-3.[7] Edelkind goes so far as to assert that he "never had an effective opportunity to file any pre-trial motions, such as a motion to dismiss the information for failure to state an offense." Id. at 3. But a momentary glance at the record puts this claim to rest. The purported "defect" which Edelkind now trumpets (i.e., the failure to use the word "materiality") was fully present in the Information that was initially filed in this case. Information, Docket Entry #1 (3/11/2004). Edelkind had almost a year between the filing of that information and trial to challenge the wording of those charges. Nothing about the timing of any subsequent superseding informations prevented Edelkind from raising this putative issue in a timely fashion.

4.  Claims of Variance and Misplaced Venue

Appended to Edelkind's Motion for Arrest of Judgment are two claims of error that cannot, by any stretch of the imagination, be deemed to fall under any exception to the 7-day rule for post-trial challenges to a conviction. These claims, asserting a variance between the information and the proof at trial and challenging the evidence of venue, are plainly time-barred.

---

[7] Nor is there any substance to Edelkind's insinuation that some error attached to the lack of a second arraignment and plea on the Second Superseding Information. See Garland v. Washington, 232 U.S. 642, 644-46 (1914) (affirming conviction despite lack of arraignment because accused, who had notice of charges and adequate opportunity to prepare defense, was not deprived of any substantial right); Thomas v. United States, 455 F.2d 469, 470 (5th Cir. 1972) (citing Garland and noting "the record reveals not the slightest protest or utterance from [defendant] which might have led the district court to suspect that [defendant] wished to plead anew."). See also United States v. Vavlitis, 9 F.3d 206, 210 (1st Cir. 1993) (noting that trial "could have proceeded" on superseding indictment, notwithstanding lack of arraignment and plea on that charging instruction) (citing United States v. Boruff, 909 F.2d 111, 118 (5th Cir.1990), and Garland).

First, Edelkind claims that there was a variance between the charge in the information and the proof at trial. He asserts, "[t]he government never attempted to demonstrate that the loan was assigned to Lehman Brothers Bank, FSB." Motion for Arrest of Judgment at 4. This claim rests on a flatly incorrect premise. A variance occurs when proof at trial differs from the allegations in an indictment.[8] In this case, however, there was no difference between the allegations and the proof. On the contrary, the parties stipulated, as quoted above, "that Lehman Brothers Bank bought the Linda Edelkind loan and mortgage on or after September 28, 2004." The United States proved precisely what was alleged in the information.

Second, Edelkind suggests that the United States failed to establish venue.[9] His claim is entirely without merit.

Edelkind waived any challenge to venue by not raising a timely objection before trial. See United States v. LiCausi, 167 F.3d 36, 44 (1st Cir. 1999) (defendant's failure to raise venue challenges prior to trial constitutes waiver); United States v. Cordero, 668 F.2d 32, 44 (1st Cir. 1981) ("[T]he courts have consistently ruled that a claim of improper venue must be raised at least prior to a verdict."). Nor is this a claim that can be resurrected by casting aspersions on Edelkind's prior counsel. See United States v. Santiago, 83 F.3d 20, 24 n.3 (1st Cir. 1996) (rejecting defendant's "attempt to blunt this waiver by citing the alleged ineffectiveness of his

---

[8] Even if there had been a variance, "[a] variance requires reversal of a conviction only if it is both material and prejudicial, for example, if the variance works a substantial interference with the defendant's right to be informed of the charges laid at his doorstep." United States v. Arcadipane, 41 F.3d 1, 6 (1st Cir. 1994). Even if Edelkind had identified some genuine variance, there is not a shred of evidence to support a contention that it was either material or prejudicial.

[9] Venue is not an element of the charged offense and need be established only by a preponderance of the evidence. See United States v. Cordero, 668 F.2d 32, 44 n.18 (1st Cir. 1981).

trial counsel"). Edelkind also waived any challenge to venue by failing to raise it in his post-trial motion for acquittal. See United States v. Dandy, 998 F.2d 1344, 1357 (6th Cir. 1993) ("[W]here as here a motion for acquittal is made on specified grounds which do not include any objection to venue, we think that objection has been waived."); Gilbert v. United States, 359 F.2d 285, 288 (9th Cir. 1966) (finding waiver where the defendant made a motion to acquit on specific grounds and did not mention venue); United States v. Vinieris, 606 F.Supp. 1390, 1395 (S.D.N.Y. 1985) (noting Second Circuit rule "that a venue objection is waived "'when, after the government has concluded its case, the defendant specifies grounds for acquittal but is silent as to venue'").

Even if a venue challenge had been preserved, there was ample evidence to show that Edelkind's bank fraud took place, in major part at least, in Massachusetts. Among other things, the residential property that was the collateral of the fraudulent loans was located in Hull, Massachusetts. Multiple witnesses attested that Edelkind resided there. A reasonable jury could properly infer that a variety of Edelkind's fraudulent activities – including making and receiving numerous telephone calls in his efforts to secure the loan – took place at or near his residence. The jury also heard testimony from the closing attorney for the Fairmont loan, who described the loan closing that took place at her office, in Charlestown, Massachusetts. See Exhibit 10j (settlement statement reflecting place of settlement). This evidence was more than sufficient to establish venue for the charges at issue in this case. See United States v. Scott, 270 F.3d 30, 36 (1st Cir. 2001) ("Bank fraud is also a continuing offense under 18 U.S.C. § 3237(a) and so venue was proper wherever the offense was 'begun, continued, or completed.'").

CONCLUSION

Edelkind's last-minute challenges to his conviction are time-barred and otherwise without merit. Accordingly, Edelkind's Second Motion for Acquittal and his Motion for Arrest of Judgment should be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

dated: June 13, 2005

By:   /s/ Paul G. Levenson
PAUL G. LEVENSON
KRISTINA BARCLAY
Assistant U.S. Attorneys
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3147