UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL NO. |
| v. ) | 04 − 10066 MEL |
| ) | |
| JAMIE EDELKIND ) | |

**DEFENDANT JAMIE EDELKIND'S MOTION FOR AN EVIDENTIARY HEARING TO DETERMINE THE ACCURACY IN FACT OF THE TRIAL STIPULATION THAT "LEHMAN BROTHERS BANK BOUGHT THE LINDA EDELKIND LOAN AND MORTGAGE ON OR AFTER SEPTEMBER 28, 2004"**

On June 8, 2005, the defendant Jamie Edelkind ("Edelkind") filed a Second Renewed Motion for Judgment of Acquittal With Respect to Count Four of the Second Superseding Information.[1] The ultimate point of the motion was that the government failed to prove any fraud upon, any loss of money by, or any risk of loss to, Lehman Brothers Bank, FSB (Lehman FSB)," the only entity that was a "financial institution" within the meaning of the bank fraud statute, 18 U.S.C. § 1344. Subsidiary points were that Fairmont Funding Ltd ("Fairmont") was a mortgage lender, but not a § 1344 "financial institution;" that Fairmont funded the Linda Edelkind loan in its own name from its own sources; that Fairmont dealt solely with Aurora Loan Services, a Lehman FSB subsidiary and not a § 1344 "financial institution"; and that:

---

[1] The court denied this motion on June 14, 2005.

1

Edelkind's current counsel has found no evidence from the testimony of the Fairmont representative, from the testimony of the Aurora representative, or from any trial exhibit that Aurora or anyone else actually purchased the loan from Fairmont, paid anything to Fairmont or has any obligation to pay anything to Fairmont.[2]

On June 13, 2005, the court held a status conference. At the conference, the government represented that there had been a trial stipulation to the effect that Lehman FSB had purchased the Edelkind note. The precise stipulation, in relevant part and as set forth in a subsequently obtained transcript excerpt from the March 4, 2005, trial proceedings, was: "The parties stipulate that Lehman Brothers Bank bought the Linda Edelkind loan and mortgage on or after September 28, 2004."[3]

At the June 13th status conference, the government also provided documents which, as Edelkind's counsel recalls, were described as the master agreements under which Lehman FSB purchased the Edelkind loan.[4] The documents included, first, a three page document entitled "Addendum #1 To the Loan Purchase Agreement." The Addendum is dated August 8, 2001 and purports, in the first paragraph, to be between Lehman FSB and Fairmont. The second paragraph of the Addendum states that "LBB [Lehman FSB] and Seller [Fairmont] have executed that certain Loan Purchase Agreement (the "Agreement") dated the 8th day of August 2001."

---

[2] Second Renewed Motion, page 4.

[3] At the time of the status conference, there was no transcript of that portion of the proceedings that included the stipulation. Immediately after the conference, Edelkind's counsel obtained a transcript excerpt of the portion of the proceedings on March 4, 2005, that included the stipulation. A copy of the excerpt is attached as Exhibit A. Edelkind submits that even if the stipulation is accurate, it does not resolve the issues presented in Edelkind's Second Renewed Motion. The stipulation does not establish from whom Lehman FSB bought the loan and mortgage, when "after September 28, 2004" it bought the loan and mortgage, the terms of its purchase of the loan or mortgage, or whether any "material" misrepresentations were made to it when it bought the loan or mortgage.

[4] Edelkind's counsel does not believe that these documents had been previously provided to the defendant.

2

And in the third paragraph, there is reference to the Agreement "and the Aurora Loan Services Inc. Seller's Guide." The Addendum is signed on behalf of Fairmont, but there is no signature on behalf of Lehman FSB.[5] And there was no Loan Purchase Agreement, dated August 8, 2001, between Fairmont and Lehman FSB among the documents the government provided. A copy of the Addendum is attached hereto as Exhibit B.

A second set of documents the government presented on June 13, 2005, included a fully executed "Loan Purchase Agreement," dated May 27, 1998, between "Aurora Loan Services Inc." and Fairmont and a fully executed Addendum to that Loan Purchase Agreement, dated July 14, 1998. The Loan Purchase Agreement and the Addendum each refers to and incorporates an "Aurora Loan Services Inc. Seller's Guide." Copies of the "Aurora" Loan Purchase Agreement and the Addendum are attached as Exhibit C.

The third set of documents the government provided on June 13, 2005, includes what appears to be a twenty page section of the Aurora Seller's Guide, specifically Section 7 thereof, covering "Representations, Warranties and Indemnifications." The indicated print date is April 2, 1998. There is no reference to Lehman FSB in this twenty page section of the Aurora Seller's Guide. A copy is attached as Exhibit D.

The documents that the government provided on June 13, 2005, do not support the stipulation that Lehman FSB bought the Linda Edelkind loan. In addition, in connection with the forfeiture aspects of this proceeding, Fairmont Funding Ltd filed a verified "Petition of Fairmont Funding Ltd." Under date of May 12, 2005, Steven Rimmer, the Executive Vice President of Fairmont, affirmed under the pains and penalties of

---

[5] There was no indication of an agreement for counterpart signatures.

3

perjury, that in August or September of 2004 Fairmont funded the Linda Edelkind loan and mortgage and that "Subsequently, pursuant to a master agreement, Fairmont sold the mortgage in the secondary market to Aurora, a division of Lehman Brothers, a giant financial institution."[6] In addition, an FBI 302 produced to Edelkind's counsel on February 14, 2005, reflects a government interview on October 21, 2004, of Isaac Aryeh, the Fairmont representative who testified at trial. Mr. Aryeh was interviewed at the offices of Elliot Wales. In the last paragraph of the Form 302 is the statement − "Wales acknowledged that FFL [Fairmont] sold Edelkind's mortgage to Aurora Loan Services, Inc., Aurora, CO."

    Elliot Wales, Esq. has appeared in this proceeding on behalf of Fairmont. Current counsel for Edelkind has had telephone conversations with Mr. Wales and in those conversations Mr. Wales stated that he was unaware of a master agreement between Fairmont and Lehman FSB, but that he was aware of the 1998 agreement between Fairmont and Aurora. When asked when, from whom, and how Fairmont was paid for the transfer of the loan note, Mr. Wales assumed that funds were wired, but did not know the date or the source of the funds.

    On June 16, 2005, Assistant U.S. Attorney Paul Levenson faxed to Edelkind's counsel a copy of a victim impact statement, dated May 31,

---

[6] ¶ 4 of the "Petition of Fairmont Funding Ltd" a copy of which is attached as Exhibit E. Mr. Rimmer's assertion that Aurora is a division of Lehman Brothers is plainly in error. The trial testimony was that Aurora was a subsidiary of Lehman Brothers, and perhaps not even a wholly owned subsidiary. See Day Four Trial Transcript, Excerpt, pages 78 and 96. Actually, at least during 2004, there appears to have been two "Aurora" corporate entities − "Aurora Loan Services LLC" and "Aurora Loan Services Inc." On December 20, 2004, Aurora Loan Services, Inc. filed an Annual Report with the Secretary of State of the Commonwealth of Massachusetts. On January 5, 2005, Aurora Loan Services LLC applied to the Massachusetts Secretary of State for registration as a Foreign Limited Liability Company and in the application stated that the date of its organization in Delaware was May 15, 1997.

2005. The statement, from Aurora Loan Services, asserted that "[o]n September 30, 2004, Lehman Brothers Bank FSB" purchased the loan from "Fairmont Funding" and that concurrently "Aurora Loan Services LLC" retained servicing of the account.[7] Included with the impact statement was a copy of the Linda Edelkind "Note." This copy included three endorsements "without recourse". The first endorsement, from Fairmont, is to "Lehman Brothers Bank, FSB" and is dated August 31, 2004. The endorsee's name − Lehman Brothers Bank, FSB − was stamped on the document. The second endorsement was undated and went from "Lehman Brothers Bank FSB" to Lehman Brothers Holdings, Inc., and the final endorsement, also undated, was in blank and was from Lehman Brothers Holdings, Inc. A copy of this "endorsed" Note is attached as Exhibit F.

The Exhibit F document would appear to place Lehman FSB in the chain of ownership of the Edelkind Note. However, there is evidence that these endorsements were only recently applied to the original Note. On April 19, 2005, counsel for Aurora Loan Services filed an appearance in this proceeding.[8] The Notice, ¶ 4, identified Aurora as "the current holder of the Note and Mortgage executed by the defendant's spouse, Linda Edelkind." A "true and accurate copy" of the "Note" was attached as Exhibit A to the Notice. The attached "true and accurate copy" included only an endorsement in blank from Fairmont. A copy of this Note with only the blank endorsement is attached as Exhibit G. Edelkind submits that any endorsement to Lehman FSB took place after April 19, 2005 and well after

---

[7] As reflected in the preceding note, Aurora Loan Services LLC did not register to do business in Massachusetts until January 5, 2005.

[8] The Notice of Appearance identified only "Aurora Loan Services" and not the specific corporate entity represented.

trial in this proceeding was completed.[9]

Edelkind submits that there is no evidence that establishes the accuracy of the stipulation that at the time of the trial Lehman FSB had bought the Linda Edelkind Note. Edelkind further submits that there is evidence that Aurora Loan Services and not Lehman FSB had purchased the Note and was holding it, endorsed in blank, until after the trial had been completed.[10] Lehman FSB was the only entity federally insured. An appropriate connection of Lehman FSB to the Note, and to any fraud connected with the Note, is a necessary jurisdictional fact for criminal liability under 18 U.S.C. § 1344.

Edelkind's current counsel has reviewed the trial exhibits, the pre-trial discovery from the government, and the government's pre-trial exhibit and witness lists. At the time of the March 4, 2005 stipulation, the government had not identified any document that supported a sale of the Edelkind Note to Lehman FSB. The government's Supplemental Witness List, filed on February 24, 2005, just a couple of days prior to trial, identified Scott Brown as a "Lehman Brothers Bank FSB" witness. Mr. Brown, however, was an employee of Aurora Loan Services and not an employee of Lehman FSB. And he certainly did not testify that Lehman FSB purchased the Edelkind loan.[11] At the time of the March 4, 2005, stipulation, there was no Lehman

---

[9] Absent some other agreement, the rightful holder of a Note endorsed in blank is the owner. It appears that Aurora held the Edelkind Note in blank for some time. It would be helpful to know the source of the money that went to Fairmont in return for the Note endorsed in blank.

[10] On information and belief, Lehman Brothers Holdings, Inc., the principal and publicly traded Lehman Brothers company, through its various subsidiaries and affiliated companies, assembles mortgage loans into pools for sale into trusts which then issue mortgage backed financial instruments. Aurora plays a very significant role, including substantial mortgage origination, in the Lehman mortgage backed securitization business. Lehman FSB appears to play a relatively minor role.

[11] In fact, Mr. Brown did not appear to know anything about an actual sale of the loan to

FSB witness on the government witness list and there was no document on any government exhibit list or among documents produced to the defense, identifying Lehman FSB as a purchaser of the Edelkind Note.

Edelkind's current counsel has been advised by Edelkind's trial counsel that, though he does not specifically recall the stipulation, he would not have agreed to the stipulation without a representation from the government that it was factually accurate and provable. Apparently the government so represented. Edelkind cannot suggest at this time that any such representation was not made in good faith, but Edelkind submits that the representation was not accurate. Edelkind further submits that the representation was about knowable facts and that the government bears responsibility for the accuracy of those facts.

Although it has certainly not been established that Lehman FSB ever bought the Linda Edelkind Note, made any payments in connection with the Note, or was ever subject to any liability as a result of the Note, Edelkind has also not established the contrary. An evidentiary hearing is necessary in order for Edelkind to establish what he submits is in fact the case − that Lehman FSB did not "buy" the Edelkind Note and was not itself defrauded or subject to a risk of loss within the meaning of 18 U.S.C. § 1344. Such a determination would then be a predicate for motions to acquit on or to dismiss Count Four because of the government's "misrepresentation"[12] as to jurisdictional facts, or, in the alternative, as a predicate to a motion for a new trial for ineffective assistance of trial counsel.

---

either Aurora or Lehman. At page 99 of the Day Four Trial Transcript Excerpt, he appears to accept the suggestion of a sale to Aurora and at page 100 he testifies that he does not know the date of any sale from Fairmont to "Lehman Brothers."

[12] Edelkind submits that even if the government acted in good faith, because its representation was of facts knowable to the government at the time of the representation, it would be responsible for a "misrepresentation."

Edelkind submits that he has made a more than sufficient showing to warrant the evidentiary hearing requested.

JAMIE EDELKIND

By his attorney,

s/ Michael J. Liston

_____
Michael J. Liston BBO# 301760
2 Park Plaza, Suite 610
Boston, MA 02116
(617) 426-2281

June 22, 2005