# EXHIBIT C

# FORM OF LOAN PURCHASE AGREEMENT

## (SERVICING RELEASED TRANSACTIONS)

This is a LOAN PURCHASE AGREEMENT (the "Agreement"), dated as of May 27, 19$^{98}$, [Seller No. 7141], by and between Aurora Loan Services Inc., having an office at 2530 S. Parker Road, Suite 601, Aurora, Colorado 80014 ("ALS") and Fairmont Funding, Ltd., having an office at 39 W. 37th Street NYC (the "Seller").

## WITNESSETH:

WHEREAS, the Seller desires to sell, from time to time, to ALS, and ALS desires to purchase, from time to time, from the Seller, certain conventional, adjustable and/or fixed rate residential first mortgage loans (the "Mortgage Loans") which shall be delivered on a servicing released basis, on various dates (each a "Purchasing Date") as provided in the Aurora Loan Services Inc. Seller Guide, as amended from time to time (the "Seller Guide");

WHEREAS, each Mortgage Loan is secured by a mortgage, deed of trust or other security instrument creating a first lien on a residential dwelling located in the jurisdiction indicated in the Delivery Commitment Confirmation for the related Mortgage Loan;

WHEREAS, ALS and the Seller have agreed that the Mortgage Loans shall be conveyed in the manner set forth in the Seller Guide; and

WHEREAS, this Agreement is the "Loan Purchase Agreement" referred to in Section 100 of the Seller Guide;

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, ALS and the Seller agree as follows:

SECTION 1. Agreement to Purchase. The Seller agrees to sell, and ALS agrees to purchase, from time to time, Mortgage Loans as further described in the related Purchase Advice and the related servicing rights thereto, pursuant to the terms and conditions of the Seller Guide.

SECTION 2. Incorporation of Seller Guide; Conflicts; Seller Agreement. The terms and provisions of the Seller Guide and all forms therein are hereby incorporated and made a part hereof and are an integral part of this Agreement. In the event of any conflict,

inconsistency or discrepancy between any of the provisions of the Seller Guide and any of the provisions of this Agreement, the provisions of this Agreement shall control and be binding upon ALS and the Seller. The Seller hereby (i) acknowledges that it has received and reviewed the Seller Guide and (ii) agrees to be bound by the terms and conditions set forth therein.

SECTION 3. Counterparts. This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

SECTION 4. Successors and Assigns; Assignment of Loan Purchase Agreement. This Agreement shall bind and inure to the benefit of and be enforceable by the Seller and ALS and their respective successors and assigns. This Agreement shall not be assigned, pledged or hypothecated by the Seller to a third party without the consent of ALS.

SECTION 5. Defined Terms. Capitalized terms used but not defined herein shall have the respective meanings set forth in Section 8 of the Seller Guide.

SECTION 6. Costs. All costs and expenses incurred in connection with the transfer and delivery of the Mortgage Loans, shall be paid by the party identified in the Seller Guide, as applicable, or if no party is identified, by the Seller.

SECTION 7. Notices. All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or, if by other means, when received by the other party at (i) the address in the Seller Guide if to ALS, and (ii) as follows if to the Seller:

| Fairmont Funding, Ltd. |
| 39 West 37th Street |
| New York, NY 10018 |
| Attn:   Arthur Deitel |

or such other address as may hereafter be furnished to the other party by like notice. Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

SECTION 8. **Governing Law. This Agreement and the Seller Guide shall be construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York, except to the extent preempted by Federal law.**

SECTION 9. Waivers. No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced.

SECTION 10. <u>Reproduction of Documents</u>. This Agreement and all documents relating hereto, including, without limitation, (a) consents, waivers and modifications which may hereafter be executed, (b) documents received by any party at the closing, and (c) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process. The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

SECTION 11. <u>Further Agreements</u>. The Seller and ALS each agree to execute and deliver to the other such reasonable and appropriate additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of the Seller Guide.

SECTION 12. <u>Confidentiality</u>. The Seller hereby agrees that the terms and conditions of any Purchase Advice, this Agreement, the Seller Guide and all Delivery Commitments shall be kept confidential and their contents shall not be divulged to any party without ALS' consent except to the extent that it is necessary for the Seller to do so in working with legal counsel, auditors, taxing authorities or other governmental agencies.

SECTION 13. <u>State of Incorporation</u>. The Seller is duly organized validly existing and in good standing under the laws of the state of New York.

IN WITNESS WHEREOF, the Seller and ALS have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

AURORA LOAN SERVICES INC.
(Purchaser)

By: _____
Name: __RICK W. SKOGG__
Title: __PRESIDENT__

[SELLER]
(Seller)

By: __Fairmont Funding, Ltd.__
Name: _____
Title: __Arthur Deitel, President__

## ADDENDUM TO LOAN PURCHASE AGREEMENT

THIS ADDENDUM ("Addendum") is made this 14th day of July 1998, by and between Aurora Loan Services Inc. ("ALS") and Fairmont Funding, Ltd. ("Seller").

WHEREAS, ALS and Seller have executed that certain Loan Purchase Agreement (the "Agreement") dated the 27th day of May 1998; and

WHEREAS, ALS and Seller wish to amend certain terms, provisions and conditions of the Agreement and the Aurora Loan Services Inc. Seller's Guide (the "Seller's Guide");

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, ALS and Seller agree as follows:

1. There shall be inserted in Section 703, Subsection 12, under the heading "Validity of Mortgage Documents", as the final paragraph under this heading, the following:

   "Notwithstanding the foregoing and as it relates to Mortgage Loans submitted under ALS' limited documentation program, where such limited documentation program requires a borrower statement of income with no further verification of such stated income, and such loans have been underwritten by ALS prior to purchase by ALS, ALS' discovery of misrepresentation of income by the borrower, for which Seller had no knowledge of or would not reasonably be expected to have known of such misrepresentation, shall not be considered an Event of Default hereunder."

2. Section 703, Subsection 19, "No Mechanic's Lien", shall be deleted in its entirety and there shall be substituted in lieu thereof the following:

   "**No Mechanic's Lien.** To the best of Seller's knowledge, there is no mechanic's or similar lien or claim that has been filed for work, labor or material (and no rights are outstanding that are under applicable law could give rise to such a lien or claim), affecting the related Mortgaged Property, which is or may be a lien prior to, or equal with, the lien of the related Mortgage."

3. Section 703, Subsection 20, "Location of Improvements; No Encroachments", shall be deleted in its entirety and there shall be substituted in lieu thereof the following:

   "**Location of Improvements; No Encroachments.** To the best of Seller's knowledge, (i) all improvements which are considered in determining the appraised value of the Mortgaged Property at origination lie wholly within the boundaries and building restriction lines of the Mortgage Property and no improvements on adjoining properties encroach upon the Mortgaged Property (except such encroachments as have been affirmatively insured over by the title insurer), and (ii) no improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulations."

4. Section 708, "Termination without Cause", shall be deleted in its entirety and there shall be substituted in lieu thereof the following:

   "In addition to the provisions set forth elsewhere herein or in the Purchase Agreement for termination of this Seller's Guide and the Purchase Agreement, this Seller's Guide and the Purchase

Addendum to Loan Purchase Agreement
Fairmont Funding, Ltd.
Page 2 of 2

Agreement may be terminated without cause at any time by either party upon prior written notice of termination to the other party. The effective date of termination must be specified in such notice and must be at least sixty (60) days after the date of such written request."

5. The final paragraph of Section 710 shall be deleted in its entirety and there shall be substituted in lieu thereof the following:

"All ALS' remedies hereunder, including, without limitation, the repurchase obligation with respect to the Mortgage Loan, the purchase obligation with respect to the Mortgaged Property, and the indemnification with respect to any breach of a representation, warranty or covenant (or any other Event of Default), shall exist regardless of the dates of ALS' discovery and notice to Seller of the breach and ALS' demand for any remedy. Notwithstanding any other provision of the Seller's Guide or Purchase Agreement to the contrary, Seller shall remain liable for all remedies hereunder, even if ALS discovers a breach after the Mortgage Loan is liquidated in foreclosure."

6. Section 716, "Early Payoff", shall be deleted in its entirety and there shall be substituted in lieu thereof the following:

"If a Mortgage Loan is paid in full within three (3) months of the Purchase Date, Seller will reimburse ALS that portion of the Purchase Price in excess of par multiplied by the Unpaid Principal Balance as of the date of payment in full, net of Prepayment charges collected."

Other than specifically set forth herein, the terms, provisions and conditions of the Agreement and the Seller's Guide shall remain in full force and effect.

IN WITNESS WHEREOF, the Seller and ALS have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first written above.

AURORA LOAN SERVICES INC.
(Purchaser)
By: _____
Name: **RICK W. SKOGG**
Title: **PRESIDENT**

FAIRMONT FUNDING, LTD.
(Seller)
By: _____
Name: ANTHUR DOITOL
Title: PRESIDENT