# EXHIBIT D

Section 7
# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

## 700 CONTINUING ELIGIBILITY REQUIREMENTS

To continue as an approved ALS Conduit Seller, an approved Seller must remain in compliance with all provisions of this Seller Guide and the Purchase Agreement.

## 701 REPRESENTATIONS, WARRANTIES, AND COVENANTS OF SELLER

Seller acknowledges that ALS purchases Mortgage Loans in reliance upon: (i) the truth and accuracy of Seller's representations and warranties set forth in the Purchase Agreement and this Seller Guide, each of which representations and warranties relates to a matter material to such purchase; and (ii) Seller's compliance with each of the agreements, requirements, terms, covenants, and conditions set forth in the Purchase Agreement and this Seller Guide. Seller makes the representations, warranties, and covenants set forth in this Section as of the date of the Purchase Agreement and remakes them as of each Purchase Date, unless the representation or warranty provides otherwise. Making such representations, warranties and covenants does not release Seller from its obligations under any representations, warranties, or covenants contained in other sections of this Seller Guide, including the exhibits hereto, or in the Purchase Agreement. It is expressly understood and agreed that ALS's rights in connection with Seller's representations, warranties, and covenants survive the Purchase Date of any particular Mortgage Loan and any termination of the Purchase Agreement, and are not affected by any investigation or review made by, or on behalf of, ALS, except to the extent expressly waived in writing by ALS.

In addition to ALS's right to assign its rights and duties under the Purchase Agreement and the Seller Guide, Seller agrees that ALS separately may assign to any other party any or all representations, warranties or covenants made by Seller to ALS in the Seller Guide and Purchase Agreement, along with any or all of ALS's remedies available against Seller for Seller's breach of any representation, warranty or covenant, including, without limitation, the repurchase and indemnification remedies. Any such party shall be an intended third party beneficiary of these representations, warranties, covenants and remedies.

## 702 CONCERNING SELLER AND GUARANTOR

In addition to the representations, warranties, and covenants set forth elsewhere in this Seller Guide, Seller: (i) represents and warrants to ALS as of the respective dates of the Purchase Agreement and as of each Purchase Date; and (ii) covenants to ALS that:

A. **Due Organization; Good Standing; Licensing.** Seller and to Seller's knowledge, Seller's Guarantor, if applicable, is and shall continue to be duly organized, validly existing, and in good standing under the laws of the United States or under the laws of the jurisdiction in which it was incorporated or organized, as applicable, and has and shall continue to maintain licenses, registrations, and certifications necessary to carry on its business as now being conducted, and is and will continue to be licensed, qualified, and in good standing in each state where a Mortgaged Property is located if the laws of such state require licensing or qualification in order to conduct business of the type conducted by Seller, and, in any event, Seller is and will remain in compliance with the laws of any such state, and is and will remain in good standing with federal authorities, to the extent necessary to ensure the enforceability of the related Mortgage Loan. Seller has disclosed the final written reports, actions and/or sanctions of any and all reviews, investigations, examinations, audits, actions and/or sanctions that have been undertaken and/or

Section 7
# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

B.  imposed, within two (2) years prior to the date of the Purchase Agreement, by any federal or state agency or instrumentality with respect to either the lending related financial operations of Seller, or the ability of Seller to perform in Accordance with the Terms hereof. Except as may have been disclosed to and approved by ALS in writing, Seller is not operating under any type of agreement or order (including, without limitation, a supervisory agreement, memorandum of understanding, cease and desist order, capital directive, supervisory directive, and consent decree) with or by the Office of Thrift Supervision, Federal Deposit Insurance Corporation. Federal Reserve Board, Office of the Comptroller of the Currency, or any state banking department of other government banking agency, and Seller is in compliance with any and all capital, leverage or other financial standards imposed by any applicable regulatory authority. Each of the representations and warranties made by Seller is true, accurate, and complete, and is deemed to be remade in its entirety, as of the date of the Purchase Agreement executed by Seller, and as of each Purchase Date.

C.  **Authority.**  Seller has and will maintain the full corporate or partnership (as the case may be) power and authority to execute and deliver the Purchase Agreement and to perform in accordance with each of the terms thereof and the terms of this Seller Guide; the execution, delivery and performance of the Purchase Agreement and the performance of the terms of this Seller Guide (including, without limitation, all instruments of transfer to be delivered under the terms of the Purchase Agreement) by Seller, and the consummation of the transactions contemplated thereby, have been duly and validly authorized; the Purchase Agreement and the Seller Guide evidence the legal valid, binding, and enforceable obligations of Seller; and all requisite corporate or partnership (as the case may be) action has been taken by Seller to make the Purchase Agreement and the terms of this Seller Guide valid and binding upon Seller, and enforceable in accordance with their respective terms.

D.  **Ordinary Course or Business.**  The consummation of the transactions contemplated by the Purchase Agreement and the terms of this Seller Guide are in the ordinary course of business of Seller, and the transfer, assignment, and conveyance of the Notes and the Mortgages by Seller pursuant to the Purchase Agreement and the terms of this Seller Guide are not subject to the bulk transfer laws or any similar statutory provision in effect in any applicable jurisdiction.

E.  **No Conflicts.**  Neither the execution and delivery of the Purchase Agreement, the acquisition and/or making of the Mortgage Loans by Seller, the sale of the Mortgage Loans to ALS or the transactions contemplated thereby or pursuant to this Seller Guide, nor the fulfillment of or compliance with the terms and conditions of the Purchase Agreement, will conflict with or result in a breach of any of the terms, conditions, or provisions of Sellers articles of incorporation, charter, by-laws, partnership agreement, or other organizational document (as the case may be), or of any legal restriction or regulatory directive or any agreement or instrument to which Seller is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment, or decree to which Seller or any of its property is subject, or impair the ability of ALS to realize on any of the Mortgage Loans, or impair the value of any of the Mortgage Loans.

F.  **Ability to Perform.**  Seller has the ability to perform each and every obligation of, and/or satisfy each and every requirement imposed on. Seller pursuant to the Purchase Agreement and this Seller Guide, and no offset, counterclaim, or defense exists to the full performance by Seller of

Section 7
# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

G. the requirements of the Purchase Agreement and this Seller Guide.

H. **No Litigation Pending.** There is no action, suit, proceeding, inquiry, review, audit, or investigation pending or threatened by or against Seller that, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties, or assets of Seller, or in any material liability on the part of Seller, or which would draw into question the validity or enforceability of any of the Purchase Agreement, this Seller Guide, or the Mortgage Loans or of any action taken or to be taken in connection with the obligations of Seller contemplated in the Purchase Agreement or this Seller Guide, or which would be likely to impair materially the ability of Seller to perform under the terms of the Purchase Agreement or this Seller Guide.

I. **No Consent Required.** No consent, approval, authority, or order of any court or governmental agency or body is required for the execution and performance by Seller of, or compliance by Seller with, the Purchase Agreement or this Seller Guide, the sale of any of the Mortgage Loans, or the consummation of any of the transactions contemplated by the Purchase Agreement, or, if required, such unconditional approval has been obtained prior to the related Purchase Date.

J. **No Untrue Information.** Neither the Seller Application, the Purchase Agreement, this Seller Guide, nor any statement, report, or other document furnished or to be furnished by Seller or Seller's Correspondent pursuant to the Purchase Agreement or this Seller Guide, contains any untrue statement of material facts or omits to state a material fact necessary to make the statements contained therein not misleading. Seller meets ALS's Eligibility Standards, and shall take all steps necessary to continue to meet such Eligibility Standards.

K. **Securities Law.** ALS has made no representation whatsoever to Seller concerning the applicability or inapplicability of the Security Act of 1933, as amended (the "1933 Act") or of any state securities laws (each, a "State Act") to the transactions that are the subject of this Seller Guide. Seller hereby represents and warrants to ALS as follows:
   1. The offer, issuance, sale, and delivery of the Mortgage Loans under the circumstances contemplated hereunder constitute exempted transactions under the registration provisions of the 1933 Act, and the registration of the Mortgage Loans under the 1933 Act is not required in connection with any such offer, issuance, sale, or delivery of the Mortgage Loans; and
   2. the offer, issuance, sale, and delivery of the Mortgage Loans under the circumstances contemplated hereunder constitute exempted transactions under applicable State Acts, and neither the registration or qualification of the Mortgage Loans under such State Acts nor the authorization, approval, or consent of any governmental authority or agency is required or necessary in connection with any such offer, issuance, sale, or delivery of the Mortgage Loans.

J. **No Accrued Liabilities.** Except as may be otherwise disclosed by Seller to ALS and acknowledged by ALS in writing prior to the date of the Purchase Agreement, there are no accrued liabilities of Seller with respect to any of the Mortgage Loans, or circumstances under which any such accrued liabilities will arise against ALS, as successor to Seller's interests in and to the Mortgage Loans, with respect to any action or failure to act by Seller occurring on or prior to the Purchase Date.

Section 7
# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

K. **Origination, Servicing.** The origination and servicing of the Mortgage Loans by Seller have been legal, proper, prudent, and customary and have conformed to the highest standards of the residential mortgage origination and servicing business.

L. **Compliance with Laws.** Seller has complied with, and has not violated any law, ordinance, requirement, regulation, rule, or order applicable to its business or properties, the violation of which might adversely affect the operations or financial conditions of Seller or the ability of Seller to consummate the transactions contemplated by the Purchase Agreement and this Seller Guide.

M. **Compliance with Purchase Agreement and Seller Guide.** Seller will comply with all provisions of this Seller Guide and the Purchase Agreement, and will promptly notify ALS of any occurrence, act or omission regarding Seller, the Mortgage Loan, the Mortgaged Property or the Mortgagor of which Seller has knowledge, which occurrence, act, or omission may materially affect Seller, the Mortgage Loan, the Mortgaged Property, or the Mortgagor.

## 703 CONCERNING INDIVIDUAL MORTGAGE LOANS

In addition to the representations, warranties, and covenants set forth elsewhere in this Seller Guide or the Purchase Agreement, as to each Mortgage Loan, Seller represents and warrants to ALS as of the related Purchase Date, and covenants to ALS that:

A. **Mortgage Loans as Described.** No document, report, or material furnished to ALS in any Mortgage Loan File or relating to any Mortgage Loan (including, without limitation, the Mortgagor's application for the Mortgage Loan executed by the Mortgagor), was falsified or contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading.

B. **Payments Current.** All payments required to be made through the related Purchase Date for the Mortgage Loan under the terms of the Note have been made and credited. No payment required under the Mortgage Loan is delinquent nor has any payment under the Mortgage Loan been delinquent at any time since the origination of the Mortgage Loan. For the purposes of this paragraph, a Mortgage Loan will be deemed to be delinquent if any payment due thereunder was not paid by the Mortgagor in the month such payment was due. The first monthly payment shall be made with respect to the Mortgage Loan on its due date or within the grace period, if any, all in accordance with the terms of the related Mortgage Note.

C. **No Outstanding Charges.** There has been no default under the terms of the Mortgage, and any and all taxes, including, without limitation, any and all transfer taxes due and payable to any state or municipality relating to the transfer of the ownership and occupancy interest in the Mortgaged Property, and all governmental assessments, insurance premiums, water, sewer and municipal charges, leasehold payments and/or ground rents that previously became due and owing have been paid, or an escrow of funds has been established in an amount sufficient to pay for every such item that remains unpaid and that has been assessed but is not yet due and payable.

Section 7
# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

D. **No Advances.** Except as has been clearly and conspicuously disclosed in writing to and approved by ALS prior to the Purchase Date: (i) Seller has not advanced funds, or induced, solicited, or knowingly received any advance of funds by a party other than the Mortgagor, directly or indirectly, for the payment of any amount required under the Mortgage Loan, except for interest accruing from the date of the Note or date of disbursement of the Mortgage Loan proceeds, whichever is greater, to the day that precedes by one (1) month the due date of the first (1st) installment of principal and interest; and (ii) the Mortgagor has, in compliance with the Underwriting Guidelines, made any down payment required in connection with the Mortgage Loan, and has received no concession from Seller, any Correspondent, the seller of the Mortgaged Property, or any other third party.

E. **Original Terms Unmodified.** The original terms of the Note and the Mortgage have not been impaired, waived, altered, or modified in any respect, except by a written instrument that ALS has approved and has been recorded, if necessary to protect the interests of ALS and which has been delivered to substance of any such waiver, alteration, or modification has been approved by the issuer of any related PMI Policy and the title insurer, to the extent required by the respective policies. No Mortgagor has been released, in whole or in part.

F. **No Defense.** The Mortgage Loan is not subject to any unexpired right of rescission, set-off, counterclaim or defense, including, without limitation, the defense of usury. The operation of any of the terms of the Note or the Mortgage, or the exercise of any right thereunder will not render either the Note or the Mortgage unenforceable, in whole or in part, or subject to any right of rescission, cancellation, set-off, counterclaim, or defense, including, without limitation, the defense of usury, and no such right of rescission, cancellation, set-off, counterclaim, or defense has been asserted with respect thereto. No Mortgagor was a debtor in any state or federal bankruptcy or insolvency proceeding at the time the Mortgage Loan was originated.

G. **Hazard, Flood and Mine Subsidence Insurance.** Pursuant to the terms of the Mortgage, all buildings or other improvements upon the Mortgaged Property are insured by an insurance policy or policies meeting the requirements of ALS against loss by fire, hazards of extended coverage and such other hazards as are customary in the area where the Mortgaged Property is located. All individual insurance policies contain a standard mortgagee clause naming the Seller and its successors and assigns as mortgagee, and all premiums thereon have been paid. The Mortgage obligates the Mortgagor thereunder to maintain the hazard insurance policy at the Mortgagor's cost and expense, and upon the Mortgagor's failure to do so, authorizes the Mortgagee under the Mortgage to obtain and maintain such insurance at the Mortgagor's cost and expense, and to seek reimbursement therefore from the Mortgagor. The amount of insurance is sufficient to prevent the application of any co-insurance contribution on any loss. The hazard insurance policy is the valid and binding obligation of the insurer, is in full force and effect, and will be in full force and effect and inure to the benefit of ALS upon the consummation of the transactions contemplated by the Purchase Agreement. Seller has not engaged in, and has no knowledge of the Mortgagor having engaged in, any act or omission that would impair the coverage of any such policy, the benefits of the endorsement provided for herein, or the validity and binding effect of either including without limitation, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any

**Section 7**
# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

H.  attorney, firm or other person or entity, and no such unlawful items have been received, retained or realized by the Seller.  The Mortgage documents permit the maintenance of an escrow account to pay the premiums for the above mentioned insurance, and the requirement for such escrows has now been waived, unless otherwise required by applicable state law or the Loan Documents.  Where required by state law or regulation, the Mortgagor has been given an opportunity to choose the carrier of the required hazard insurance, provided the policy is not a "master" or "blanket" hazard insurance policy covering the common facilities of a planned unit development.  ALS will require that guaranteed initial Flood Zone Determination documentation be included in every Mortgage Loan file delivered for purchase.

I.  **Origination, Underwriting, and Servicing Compliance.**  Seller, and, to the extent the Mortgage Loan was originated by, closed in the name of, or serviced by a Correspondent, such Correspondent, has duly and faithfully complied with and will continue to comply with: (i) all applicable laws, rules, regulations, decrees, pronouncements, directives, orders, and contractual requirements with respect to the origination, closing, underwriting, processing, and servicing of each Mortgage Loan; and (ii) any and all other applicable federal, state, county, municipal, or other local laws, including, without limitation, those laws relating to truth-in-lending, real estate settlement procedures, consumer credit protection, usury limitations, fair housing, equal credit opportunity, collection practices, and real estate appraisals.

J.  **No Satisfaction of Mortgage.**  The Mortgage has not been satisfied, canceled, subordinated, or rescinded in whole or in part, and the Mortgaged Property has not been released, in whole or in part, from the lien of the Mortgage, nor has any instrument been executed that would effect any such release, cancellation, subordination, or rescission.  The Seller has not waived the performance by the Mortgagor of any action, if the Mortgagor's failure to perform such action would cause the Mortgage Loan to be in default, nor has the Seller waived any default resulting from any action or inaction by the Mortgagor.

K.  **Location and Type of Mortgaged Property.**  The Mortgaged Property is a fee simple property located in the state identified in the Mortgage Loan File and unless otherwise provided for in the Purchase Agreement, consists of a single parcel of real property with a single family residence erected thereon, or a two-to-four family dwelling, or an individual unit in a planned unit development or Condominium Project, provided, however, that any condominium or planned unit development shall conform with applicable FNMA/FHMLC requirements and none of which is a mobile home, a boat, or a manufactured dwelling.  No portion of the Mortgaged Property is used for commercial purposes in such a manner that the Mortgage Property would be considered commercial, rather than residential, property by knowledgeable and sophisticated investors active in the residential secondary mortgage market.

L.  **Valid First Lien Loans Secured by Real Property.**  The Mortgage is a valid, existing, and enforceable first lien on the Mortgaged Property, and on all buildings on the Mortgaged Property, and on all installations and mechanical, electrical, plumbing, heating, and air conditioning systems located in or affixed to such buildings, and on all additions, alterations, and replacements made at any time with respect the foregoing.  The lien of the Mortgage is

## Section 7
# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

M. subject only to:

    i.   The lien of current real property taxes and assessments not yet due and payable;

    ii.  Covenants, conditions, restrictions, rights of way, easements, and other matters of the public record as of the date of recording acceptable to mortgage lending institutions generally and specifically referred to in the Title Policy delivered to the originator of the Mortgage Loan, none of which (a) were not referred to or otherwise considered in the appraisal made for the originator of the Mortgage Loan; or (b) adversely affects the appraised value of the Mortgaged Property set forth in such appraisal; and

    iii.  Other matters to which like properties are commonly subject, which other matters do not materially interfere with the benefits of the security intended to be provided by the Mortgage, or the use, enjoyment, value, or marketability of the related Mortgaged Property.

Any security agreement, chattel mortgage or equivalent document related to and delivered in connection with the Mortgage Loan establishes and creates a valid, subsisting and enforceable first lien and first priority security interest on the property described therein and the Seller has full right to sell and assign the same to the Purchaser. The Mortgaged Property was not as of the date of origination of the Mortgage Loan, subject to a mortgage, deed of trust, deed to secured debt or other security interest creating a lien subordinate to the lien of the Mortgage.

K. **Validity of Mortgage Documents.** The Note and the Mortgage are genuine, and each is the legal, valid, and binding obligation of the maker thereof, enforceable in accordance with its terms. All parties to the Note and the Mortgage had legal capacity to enter into the Mortgage Loan and to execute and deliver the Note and the Mortgage and any other related agreement, and the Note and the Mortgage have been duly and properly executed by such parties.** The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading. No fraud was committed in connection with the origination of the Mortgage Loan. The Seller has reviewed all of the documents constituting the Servicing File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein.

*to the Best of Seller's Knowledge*

L. **Full Disbursement of Proceeds.** The Mortgage Loan has been closed and the proceeds of the Mortgage Loan have been fully disbursed and there is no requirement for the future advances thereunder, and any and all requirements as to completion of any on-site or off-site improvements and as to disbursements of any escrow funds thereof have been complied with. All costs, fees, and expenses incurred in making or Closing the Mortgage Loan and the recording of the Mortgage were paid, and the Mortgagor is not entitled to any refund of any amounts paid or due under the Note or Mortgage.

M. **Ownership of Mortgage Loans.** Seller is the sole owner of record and is the holder of the

**Section 7**
# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

N.  **Mortgage Loan.** Except for the security interest of a Warehouse Lender, which security interest has been disclosed in writing to ALS, the Mortgage Loan is not assigned or pledged, and Seller has good and marketable title thereto, and has full right to transfer and sell the Mortgage Loan to ALS free and clear of any encumbrance, equity, participation interest, Lien, pledge, charge, claim, security interest, right, option, assignment, or servicing agreement with any third party, whatsoever (except pursuant to the Purchase Agreement and this Seller Guide), and Seller has full right and authority (subject to no interest or participation of, or agreement with, any other party) to sell and assign each Mortgage Loan pursuant to the Purchase Agreement and this Seller Guide.

O.  **Doing Business.** All parties that have had any interest in the Mortgage Loan, whether as mortgagee, assignee, pledgee, or otherwise, are (or during the period in which they held and disposed of such interest, were) (1) in compliance with any and all applicable requirements concerning licensing and qualifications to do business under the laws of the state wherein the Mortgaged Property is located, and (2) organized under the laws of such state, or (3) qualified to do business in such state, or (4) federal savings and loan associations or national banks having principal offices in such state, or (5) not doing business in such state.

P.  **LTV; PMI Policy.** The LTV of each Mortgage Loan does not exceed the maximum LTV permitted by the Underwriting Guidelines. All provisions of each PMI Policy have been and are being complied with, and such policy is written with a private mortgage insurance company acceptable to ALS, is the binding obligation of such insurer, is in full force and effect, and all premiums due thereunder have been paid. Seller, and, if applicable, Seller's Correspondent, has not engaged in any act or omission, and Seller has no knowledge of an act or omission by or on behalf of the Mortgagor of any other Person, which act or omission would impair the coverage or validity of any such policy, the Mortgage Loan subject to a PMI Policy obligates the Mortgagor thereunder to maintain such PMI Policy and to pay all premiums and charges in connection therewith. The Mortgage Interest Rate for the Mortgage Loan is net of any such insurance premiums.

Q.  **Title Insurance.** The Mortgage Loan is covered by either (i) an attorney's opinion of title and abstract of title, or (ii) an ALTA lender's title insurance policy or other generally acceptable form of policy of insurance acceptable to FNMA or FHLMC, issued by a title insurer acceptable to FNMA or FHLMC and qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring the Seller, its successors and assigns, as to the first priority lien of the Mortgage in the original principal amount of the Mortgage Loan [(or to the extent that a Mortgage Note provides for negative amortization, the maximum amount of negative amortization in accordance with the Mortgage)], and against any loss by reason of the invalidity or unenforceability of the lien resulting from the provisions of the Mortgage providing for adjustment in the Mortgage interest rate and monthly payment, subject only to the exceptions contained in clauses (i), (ii) and (iii) of paragraph (K) of this Section 703. Where required by state law or regulation, the Mortgagor has been given the opportunity to choose the carrier of the required mortgage title insurance. Additionally, such Title Policy affirmatively insures ingress and egress, and against encroachments by or upon the Mortgaged Property or any interest therein. Seller (or Seller's Correspondent, as the case may be) is the sole insured of the Title Policy, and such Title Policy is in full force and effect and will be in full force and effect upon the consummation of the transactions contemplated

## Section 7
# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

herein and in the Purchase Agreement. No claims have been made under such Title Policy, the accuracy of any attorney's opinion of title has not been disputed, and no prior holder of the Mortgage, including Seller, has done, by act or omission, anything that would impair the coverage of such Title Policy or the accuracy of such attorney's opinion of title including without limitation, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any attorney, firm or other person and no such unlawful item has been received, retained or realized by the Seller. The attorney's opinion of title, if applicable, is in a form and substance acceptable to mortgage lending institutions making mortgage loans in reliance upon an attorney's opinion of title in the State of Colorado.

R. **No Defaults.** There is no default, breach, violation, or event of acceleration existing under the Mortgage or the Note and, no event has occurred or condition exists that, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation, or event of acceleration, and neither Seller nor its predecessors has waived any default, breach, violation, or event of acceleration.

S. **No Mechanic's Lien.** *To THE BEST OF SELLERS KNOWLEDGE,* There is no mechanic's or similar lien or claim that has been filed for work, labor, or material (and no rights are outstanding that are under applicable law could give rise to such a lien or claim), affecting the related Mortgaged Property, which is or may be a lien prior to, or equal with, the lien of the related Mortgage.



T. **Location of Improvements; No Encroachments.** *To THE BEST OF SELLERS KNOWLEDGE* All improvements which are considered in determining the appraised value of the Mortgaged Property at origination lie wholly within the boundaries and building restriction lines of the Mortgage Property and no improvements on adjoining properties encroach upon the Mortgaged Property (except such encroachments as have been affirmatively insured over by the title insurer). No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation.



U. **Origination; Payment Terms.** The Mortgage Loan has been originated and processed by Seller or Seller's Correspondent in accordance with, and conforms with, the terms of this Seller Guide and the Purchase Agreement, and the Mortgage Loan has been underwritten in accordance with Underwriting Guidelines in effect when the Mortgage Loan was originated. The related Note is payable in self-amortizing equal monthly installments of principal and interest, with interest calculated and payable in arrears, providing for full amortization or a balloon payment by maturity, over an original term of not more than thirty (30) years from commencement of amortization. [There is no negative amortization.]

V. **Customary Provisions.** The Mortgage contains customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby, including: (i) in the case of a Mortgage designated as a deed of trust, by trustee's sale; and (ii) otherwise, by non-judicial foreclosure, if applicable, and, if not, by judicial foreclosure. To the extent permissible under applicable law, any homestead or other exemption available to a Mortgage, which exemption would interfere with the right to sell the Mortgaged Property at a trustee's sale or with the right to foreclose the Mortgage, has been waived by the

**Section 7**
# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

Mortgagor or any other necessary party Upon default by Mortgagor on a Mortgage Loan and foreclosure on, or trustee's sale, of the Mortgaged Property pursuant to the proper procedures, the holder of the Mortgage Loan will be able to delivery good and merchantable title to the Mortgaged Property.

W. **Documents.**  The Mortgage Loan has been originated using the then-current Agency forms and documents unless other documents have been expressly permitted or required by ALS.

X. **Occupancy Certifications.**  The Mortgaged Property is lawfully occupied under applicable law, unless properly disclosed to ALS. All inspections, licenses, and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property, or with respect to the use and occupancy of the same (including, without limitation, certificates of occupancy and fire underwriting certificates), have been made or obtained by Seller or Seller's Correspondent from the appropriate authorities. The Mortgagor represented at the time of origination of the Mortgage Loan that the Mortgagor would occupy the Mortgaged Property as the Mortgagor's primary residence, if applicable.

Y. **No Additional Collateral.**  The Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage and the security interest of any applicable security agreement or chattel mortgage, the existence of which has previously been disclosed to, and approved by, ALS in writing.

Z. **Deeds of Trust.**  In the event the Mortgage constitutes a deed of trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in the Mortgage, and no fees or expenses are or will become payable by ALS to the trustee under the deed of trust, except in connection with a trustee's sale after default by the Mortgagor.

AA. **Acceptable Investment.**  Seller represents that there is no circumstance or condition with respect to the Mortgage, the Mortgaged Property, the Mortgagor, or the Mortgagor's credit standing, that can reasonably be expected to cause private institutional investors to regard the Mortgage Loan as an unacceptable investment, cause the Mortgage Loan to become delinquent, or adversely affect the value or marketability of the Mortgage Loan.

BB. **Condominium Units.**  As to each condominium unit located in a Condominium Project:
I.      The Condominium Project has been created and is existing in full compliance with the requirements of the condominium enabling statue of the jurisdiction in which the Condominium Project is located, and with all other applicable laws;
II.     The condominium constituent documents contain customary and enforceable provision protecting the rights of the first mortgagee of each unit, as specified in the appropriate Fannie Mae Guidelines;
III.    Any first mortgagee who obtains title to a Condominium Unit pursuant to the remedies provided in the Mortgage or foreclosure of the Mortgage will not be liable for such Condominium Unit's unpaid dues or charges which accrue prior to the acquisition of title to such Condominium Unit by the Mortgagee;
IV.     All taxes, assessments, and charges that may become liens prior to the first mortgage under local law relate only to the individual Condominium Units and not to the Condominium Project as a whole;

Section 7
# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

V.     The requisite percentage of the units in the Condominium Project specified in the Underwriting Guidelines have been sold and conveyed to bona fide purchasers who have Closed or who are legally obligated to Close.   Multiple purchases of Condominium Units by one owner are to be counted as one sale when counting the number of sales within a Condominium Project to determine if this sale requirement has been met; and

VI.    Condominium dues or charges include an adequate reserve fund for maintenance, repairs and replacement of those common elements that must be replaced on a periodic basis, and are payable in regular installments rather than by special assessments.

CC. **Transfer of Mortgage Loans.**  The Assignment of Mortgage from Seller to ALS (or ALS's designee) is in recordable form and is acceptable for recording or filing under the laws of the jurisdiction in which the Mortgaged Property is located.

DD. **Due-on-Sale.**  In the case of a Mortgage Loan with a fixed Mortgage Interest Rate, the Mortgage contains an enforceable provision for the acceleration of the payment of the unpaid principal balance of the Mortgage Loan in the event that the Mortgaged Property is sold or transferred without the prior written consent of the Mortgagee thereunder.

EE. **No Graduated Payments or Contingent Interest.**  Unless otherwise expressly provided for in the Purchase Agreement or this Seller Guide or Product Profiles, none of the documents evidencing or securing the Mortgage Loan contains provisions pursuant to which monthly payments are paid or partially paid with funds deposited in any separate account established by the Seller, the Mortgagor or anyone on behalf of the Mortgagor or paid by any source other than the Mortgagor, nor does it contain any other similar provisions currently in effect which may constitute a "buydown" provision.   The Mortgage Loan is not a graduated payment mortgage loan; and the Mortgage Loan does not have a shared appreciation or other feature providing for contingent interest or contingent principal.

FF. **Mortgaged Property Undamaged; No Condemnation.**  The Mortgaged Property is undamaged by waste, fire, earthquake or earth movement, windstorm, flood, tornado, or other casualty so as to affect adversely the value of the Mortgaged Property as security for the Mortgage Loan or the use for which the premises were intended; and the Mortgage Property is in good repair.  There are no condemnation proceedings by any federal, state, or local authority pending or, to Seller's knowledge, threatened against the Mortgaged Property.

GG. **Servicing Practices; Escrow Deposits.**  The origination and collection practices used with respect to the Mortgage Loan have been in accordance with Accepted Servicing Practices, and have been in all respects legal and proper.  All Escrow Payments have been collected in full compliance with state and federal law.   An escrow of funds is not prohibited by applicable law and has been established in an amount sufficient to pay for every item which remains unpaid and which has been assessed but is not yet due and payable.  With respect to escrow deposits and Escrow Payments, all such payments are in the possession of Seller and there exists no deficiency in connection therewith for which customary arrangements for repayment thereof have not been made.  No escrow deposits or Escrow Payments or other

**Section 7**
# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

HH. charges or payments due Seller have been capitalized under the Mortgage or the Mortgage Note. All Mortgage Loans delivered for Purchase shall contain the HUD required Initial Escrow Account Disclosure Statement. Any interest required to be paid pursuant to state and local law has been properly paid and credited. All interest rate adjustments have been made in compliance with state and federal law.

II. **No Other Hazards.** To the best of Seller's knowledge, except as has been specifically disclosed to ALS by Seller in writing, the Mortgaged Property is not exposed to hazards (such as toxic or hazardous waste) not covered by fire and extended coverage insurance or other available insurance. The Mortgaged Property is free from any and all toxic or hazardous substances and there exists no violation of any local, state or federal environmental law, rule or regulation. There is no pending action or proceeding directly involving any Mortgaged Property of which the Seller is aware in which compliance with any environmental law, rule or regulation is an issue; and to the best of the Seller's knowledge, nothing further remains to be done to satisfy in full all requirements of each such law, rule or regulation containing a prerequisite to the use and enjoyment of said property.

JJ. **Supervision of Originator of Mortgage Loan.** The Mortgage Loan was originated by a savings and loan association, savings bank, commercial bank, credit union, insurance company, or similar institution which is supervised and examined by a Federal or State authority, or by a Mortgagee approved by the Secretary of Housing and Urban Development pursuant to Sections 203 and 211 of the National Housing Act.

KK. **Real Estate Appraisals.** Notwithstanding anything contained elsewhere in this Seller Guide or the Purchase Agreement, Seller hereby represents and warrants that (i) all appraisals conducted in connection with each Mortgage Loan, comply with applicable federal and state law, and the requirement of the Agencies and were conducted by a qualified appraiser, duly appointed by the Seller, who had no interest, direct or indirect, in the Mortgaged Property or in any loan made on the security thereof; and whose compensation is not affected by the approval or disapproval of the Mortgage Loan and (ii) with respect to any appraisal requirements imposed by or pursuant to the Financial Institutions Reform Recovery and Enforcement Act of 1989 ("FIRREA"), the related Mortgage Loan is eligible for purchase by a financial institution subject to FIRREA, and, in the case of conforming loan sizes, by the Agencies.

LL. **Bankruptcy or Insolvency.** To the best of Seller's knowledge (or Seller's Correspondent's knowledge) if applicable Mortgagor is a debtor in any state or federal bankruptcy proceeding.

MM. **Delivery of Mortgage Documents.** The Mortgage Note, the Mortgage, the Assignment of Mortgage and any other documents required to be delivered for the Mortgage Loan by the Seller under this Seller Guide have been delivered to ALS. The Seller is in possession of a complete, true and accurate Mortgage Loan file, except for such documents the originals of which have been delivered to ALS.

NN. **Consolidation of Future Advances.** Any future advances made prior to the Purchase Date have been consolidated with the outstanding principal amount secured by the Mortgage, and

Section 7

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

OO. the secured principal amount, as consolidated, bears a single interest rate and single repayment term. The lien of the Mortgage securing the consolidated principal amount is expressly insured as having first lien priority by a title insurance policy, an endorsement to the policy insuring the mortgagee's consolidated interest or by other title evidence acceptable to FNMA and FHLMC. The consolidated principal amount does not exceed the original principal amount of the Mortgage Loan.

PP. **No Construction Loans.** No Mortgage Loan was made in connection with (i) the construction or rehabilitation of a Mortgaged Property or (ii) facilitating the trade-in or exchange of a Mortgaged Property.

QQ. **No Denial of Insurance.** No action, inaction or event has occurred and no state of exists or has existed that has resulted or will result in the exclusion from, denial of, or defense to coverage under any applicable pool insurance policy, special hazard insurance policy, PMI Policy or bankruptcy bond, irrespective of the cause of such failure of coverage. In connection with the placement of any such insurance, no commission, fee, or other compensation has been or will be received by the Seller or any designee of the Seller or any corporation in which the Seller or any officer, director, or employee had a financial interest at the time of placement of such insurance.

RR. **Mortgagor Acknowledgment.** The Mortgagor has executed a statement to the effect that the Mortgagor has received all disclosure materials required by applicable law with respect to the making of adjustable rate mortgage loans. The Seller shall maintain such statement in the Mortgage Loan file.

SS. **Regarding the Mortgagor.** The Mortgagor is one or more natural persons [and/or trustees for an Illinois land trust or a trustee under a "living trust" and such "living trust" is in compliance with FNMA guidelines for such trusts].

TT. **Soldiers' and Sailors' Relief Act.** The Mortgagor has not notified the Seller, and the Seller has no knowledge, of any relief requested or allowed to the Mortgagor under the Soldiers' and Sailors' Civil Relief Act of 1940.

## 704 EVENTS OF DEFAULT

Each of the following shall constitute an Event of Default on the part of Seller under this Seller Guide and under the Purchase Agreement:

1. Any breach of any of the representations, warranties or covenants set forth in this Seller Guide or the Purchase Agreement, including, without limitation, the Eligibility Standards and the provisions of Section 7 hereof; or the failure of Seller to perform any of its obligations under this Seller Guide or the Purchase Agreement; or

2. The occurrence of an act of insolvency or bankruptcy concerning Seller, including, without limitation: (i) a decree or order of a court or agency or supervisory authority having jurisdiction for the appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, marshaling of assets and liabilities, or similar proceedings, or for the winding-up or

Section 7
# REPRESENTATIONS; WARRANTIES AND INDEMNIFICATIONS

3.  liquidation of its affairs, shall have been entered against Seller; or (ii) Seller shall consent to the appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, marshaling of assets and liabilities, or similar proceedings of or relating to Seller, or of or relating to all or substantially all of its property; or (iii) Seller shall admit in writing its inability to pay its debts generally as they become due, or Seller files a petition to take advantage of any applicable insolvency or reorganization statue, makes an assignment for the benefit of its creditors, or voluntarily suspends payment of its obligations; or

4.  Seller fails to meet any capital, leverage, or other financial standard imposed by any laws or applicable regulatory authority, or in ALS's sole discretion, any material adverse change occurs in the financial condition of the Seller, or Seller fails to meet any net worth or ownership requirements as may be set forth in the Program Documents or this Seller Guide; or

5.  Any Guarantor of Seller's obligations defaults under the terms of the Guaranty and Support Agreement (including, without limitation, any default by Guarantor in maintaining any minimum Tangible Net Worth required under, and as defined in, such Guaranty and Support Agreement), or becomes insolvent or bankrupt, or a material adverse change occurs in the financial condition of such Guarantor; or Guarantor fails to meet any capital, leverage, or other financial standard imposed by any applicable regulatory authority; or

6.  Seller defaults under the terms of any other agreement to which Seller and ALS are parties.

## 705 RIGHT TO DEMAND REASONABLE ASSURANCES

If, at any time during the term of the Purchase Agreement, ALS has reason to believe that Seller is not conducting its business in accordance with: (i) all applicable statutes, regulations, rules, and notices of federal, state or local government agencies or instrumentalities; or (ii) all applicable requirements of ALS, as set forth in this Seller Guide or the Purchase Agreement, then, in either case, ALS shall have the
right to demand, pursuant to written notice from ALS to Seller, reasonable assurances from Seller that such a belief is in fact unfounded, and any failure of Seller to provide such reasonable assurances within a time frame specified in such written notice shall itself constitute an Event of Default hereunder; **provided, however,** that, notwithstanding anything set forth in this Seller Guide or the Purchase Agreement to the contrary, and so long as no other Event of Default hereunder has occurred and is continuing, ALS shall only be entitled to exercise such remedies hereunder (with respect to an Event of Default under this section 705) as may be necessary or appropriate for ALS to insulate itself from any potential harm or loss relating to or caused by the facts or circumstances giving rise to such Event of Default. Nothing in this Section 7 shall be deemed or construed to limit, waive, or impair any of ALS's rights or remedies with respect to any Event of Default under any other Section of this Seller Guide.

## 706 ADDITIONAL REMEDIES

Upon the occurrence of any Event of Default, without affecting any repurchase obligation of Seller, and in addition to whatever rights ALS may have under the Seller Guide, Purchase Agreement or at law to damages or in equity, including, without limitation, injunctive relief and specific performance, ALS, by notice in writing to Seller, may immediately suspend all Registrations and

Section 7

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

Rate-Locks and refuse to Fund any or all Mortgage Loans, pending the cure, to ALS's satisfaction, of such Event of Default is, in ALS's judgment, susceptible to cure, but has not been cured within thirty (30) calendar days after the date of such notice of an Event of Default, ALS may, by written notice to Seller, immediately terminate any and all duties and obligations of ALS under the Purchase Agreement and this Seller Guide.

## 707 WAIVER OF DEFAULTS

ALS may waive any default by Seller in the performance of Seller's obligations hereunder and its consequences, but only by a written waiver specifying the nature and terms of such waiver. No such waiver shall extend to any subsequent or other default or impair any right consequent thereto, nor shall any delay by ALS in exercising or failure to exercise any right arising from such default affect or impair ALS's rights as to such default or any subsequent default.

## 708 TERMINATION WITHOUT CAUSE

In addition to the provisions set forth elsewhere herein or in the Purchase Agreement for termination of this Seller Guide and the Purchase Agreement, this Seller Guide and the Purchase Agreement may be terminated without cause at any time by either party upon prior written notice of termination to the other party. The effective date of termination must be specified in such notice and must be at least thirty (30) days after the date such written notice is sent.

 *60*

## 709 EFFECT OF TERMINATION

Any termination of the Purchase Agreement shall not affect Seller's obligations with respect to Mortgage Loans previously sold or delivered to ALS prior to the effective date of such termination. Provided that termination is without cause, as provided in the immediately preceding section and provided that no Event of Default on the part of Seller has occurred, termination of the Purchase Agreement by ALS shall not apply to any Mortgage Loans that have been Registered with ALS by Seller before the effective date of such termination notice. If ALS terminates the Purchase Agreement due to an Event of Default, ALS may refuse to Register or Fund any or all Mortgage Loans after the effective date of termination.

## 710 REPURCHASE OBLIGATION

In the event of a breach of any of the representations, warranties, or covenants contained in Section 700 through 710 herein, which breach materially and adversely affects the value of the Mortgage Loans or the interests of ALS, or materially and adversely affects the interests of ALS in the related Mortgage Loan, and unless ALS determines that such breach has been cured, or if a loan becomes an Early Payment Default in accordance with Section 715 herein, Seller shall, at ALS's option, repurchase the related Mortgage Loan (in the case of a breach of the representations, warranties, or covenants contained in Section 703 hereof), or all Mortgage Loans (in the case of a breach of any of the representations, warranties, or covenants contained in Section 702 hereof), at the Repurchase Price. Any such repurchase shall occur no later than thirty (30) days after the earlier of the date on which ALS notifies Seller of such breach or the date on which Seller know of such breach. Seller must notify ALS immediately upon Seller's knowledge of any breach of any representation, warranty, or covenant.

**Section 7**

# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

Seller agrees to pay any and all documentary stamp taxes, recording fees, transfer taxes, and all other expenses payable in connection with any such repurchase, including, without limitation, ALS's reasonable attorneys' fees. Any such repurchase shall occur, at ALS's option, no later than thirty (30) calendar days after the earlier of the date on which ALS notifies Seller the demand for repurchase.

Any such repurchase shall be accomplished by wire transfer from Seller to ALS of immediately available funds. Upon receipt by ALS of Seller's funds for the repurchase of Mortgage Loans, ALS shall release to Seller the related Mortgage Loan Files and shall execute and deliver to Seller such instruments of transfer or assignment, in each case without recourse, as shall be necessary to vest in Seller, or its designee, title to such repurchased Mortgage Loans. Seller shall assume the cost of recordation of assignments and other costs of transfer of any repurchased Mortgage Loans.

Notwithstanding any other provision of the Seller Guide or Purchase Agreement to the contrary, with respect to each Mortgage Loan that is the subject of any breach of one or more representations, warranties or covenants specified in Section 702 or 703 hereof, if ALS (or ALS's agent or affiliate, or any subsequent owner of the Mortgage Loan or such owner's agent or affiliate) has acquired title to the related Mortgaged Property through foreclosure, deed-in-lieu of foreclosure, abandonment or reclamation from bankruptcy of the defaulted Mortgage Loan, then, within thirty (30) days after ALS's demand therefore, Seller shall, at ALS's option: (i) purchase the Mortgage Property from ALS at the purchase price equal to the Repurchase Price; or (ii) if ALS has sold or otherwise disposed of the Mortgaged Property, indemnify ALS as specified in Section 703 hereof. If ALS determines, for any reason, not to acquire title to Mortgaged Property relating to the defaulted Mortgage Loan, Seller will nonetheless remain responsible to indemnify ALS, pursuant to Section 703 hereof, with respect to any breach of Section 702 or 703 hereof.

ALS shall ~~be under no obligation to~~ notify Seller of the occurrence of any breach of Seller's representations, warranties or covenants hereunder, or of the occurrence or existence of any other Event of Default. All ALS's remedies hereunder, including, without limitation, the repurchase obligation with respect to the Mortgage Loan, the purchase obligation with respect to the Mortgaged Property, and the indemnification with respect to any breach of a representation, warranty or covenant (or any other Event of Default), shall exist regardless of the dates of ALS's discovery and notice to Seller of the breach and ALS's demand for any remedy. Notwithstanding any other provision of the Seller Guide or Purchase Agreement to the contrary, Seller shall remain liable for all remedies hereunder, even if ALS discovers a breach after the Mortgage Loan is liquidated in foreclosure.

## 711 INDEMNIFICATION AND THIRD PARTY CLAIMS

In addition to any repurchase and cure obligations of Seller, and any and all other remedies available to ALS under this Seller Guide and the Purchase Agreement, Seller shall indemnify ALS and ALS's designee (including, without limitation, any subsequent holder of any Note) from and hold it harmless against all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments, and any other costs, fees and expenses that the Purchaser may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation, or covenant contained in or made pursuant to this Seller Guide or the Purchase Agreement by any agent, employee, representative or officer of Seller or

**Section 7**
# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

Seller's correspondent. In addition to any and all other obligations of Seller hereunder, Seller agrees that it shall pay the reasonable attorney's fees of ALS incurred in enforcing Seller's obligations hereunder, including, without limitation, the repurchase obligation set forth above. It is understood and agreed that any subsequent holder of any Note acquired hereunder by ALS shall be a third party beneficiary of the Purchase Agreement and this Seller Guide. The indemnification obligations of Seller hereunder shall survive the termination of this Seller Guide and the related Purchase Agreement.

The Seller immediately shall notify the Purchaser if a claim is made by a third party with respect to this Seller Guide, the Purchase Agreement or the Mortgage Loans, assume (with the prior written consent of the Purchaser) the defense of any such claim and pay all expenses in connection therewith, including counsel fees, and promptly pay, discharge and satisfy any judgment or decree which may be entered against it or the Purchaser in respect of such claim. The Purchaser promptly shall reimburse the Seller for all amounts advanced by it pursuant to the preceding sentence except when the claim is in any way related to the Seller's indemnification with respect to a breach by the Seller of any representation or warranty, or the failure of the Seller with respect to any of the Seller's obligations under this Seller Guide or the Purchase Agreement.

## 712 SURVIVAL OF REMEDIES

It is understood and agreed that ALS's remedies for breach of the representations, warranties or covenants set forth herein and/or in the Purchase Agreement shall survive the sale and delivery of the related Mortgage Loan to ALS and Funding of the related Purchase Price by ALS, and will continue in full force and effect, notwithstanding any termination of this Seller Guide and the related Purchase Agreement, or any restrictive or qualified endorsement on any Note or Assignment of Mortgage or loan approval or other examination of or failure to examine any related Mortgage Loan File by ALS.

## 713 MISCELLANEOUS

### GOVERNING LAW

The Purchase Agreement shall be construed in accordance with the substantive law of the State of New York and the obligations, rights, and remedies of the parties hereunder shall be determined in accordance with such law without regard for the principles of conflict of laws.

### SEVERABILITY OF PROVISIONS

If any one or more of the covenants, agreements, provisions, or terms of the Purchase Agreement or this Seller Guide shall be held invalid for any reason whatsoever, then any such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions and terms of the Purchase Agreement or this Seller Guide and shall in no way affect the validity or enforceability of the other provisions of the Purchase Agreement or this Seller Guide.

## Section 7
# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

### ASSIGNMENT

ALS shall have the right to assign its rights and duties under the Purchase Agreement and this Seller Guide to any party without the consent of Seller. ALS shall notify Seller in writing of any such assignment. Seller shall have no right to assign its rights or duties under the Purchase Agreement or this Seller Guide without ALS's prior written consent. ALS also may assign separately to any other party any or all representations, warranties or covenants made by Seller to ALS in the Seller Guide or Purchase Agreement, along with any or all of ALS's remedies available against the Seller for Seller's breach of any representation, warranty or covenant hereunder, including, without limitation, the repurchase and indemnification remedies. Any such party shall be an intended third party beneficiary of those representations, warranties, covenants and remedies.

### GOVERNING CONTRACT

In the case if any inconsistency between this Seller Guide and the Purchase Agreement, the terms of the Purchase Agreement shall control. In the event of any conflict between the substantive provisions of the Underwriting Guidelines and the other substantive provisions of this Seller Guide, such other provisions of the Seller Guide shall control.

### ENTIRE AGREEMENT; NO WAIVER

This Seller Guide, the Purchase Agreement, and/or the exhibits hereto and thereto contain the final and entire agreement between ALS and Seller with respect to the purchase and sale of the Mortgage Loans, and are intended to be an integration of all prior negotiations and understandings. No waiver of any of the provisions of this Seller Guide or Purchase Agreement shall be valid unless the same is in writing and is signed by the party against which such waiver is sought to be enforced. Delay by ALS in exercising any right or remedy under this Seller Guide, under the Purchase Agreement, or otherwise provided by law shall not operate as a waiver or preclude the later exercise of that right or remedy.

### NO PARTNERSHIP

Nothing herein contained shall be deemed or construed to create a partnership or joint venture between the parties hereto. At no time shall Seller represent that it is acting as an agent for or on behalf of ALS. At all times Seller shall act as an independent contractor.

### CONFIDENTIALITY

As a result of its relationship with ALS and access to the Purchase Agreement, Seller will learn or have access to various trade secrets, confidential and proprietary methods, techniques, processes, applications, approaches and other information in various forms, which such information is used or useful in the conduct of ALS's business, including its origination, purchase, sale and servicing of mortgage products, collectively referred to as "Confidential Information". Seller acknowledges that such Confidential Information is the exclusive property of ALS. Seller shall not, at any time, regardless of if, when and how its relationship with ALS may terminate, directly or indirectly use, disclose, publish, reveal, copy, disseminate or otherwise make available such Confidential Information, other than as expressly set forth herein or in the Purchase Agreement.

## Section 7
# REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

### NON-EXCLUSIVE RELATIONSHIP

Notwithstanding anything set forth herein or elsewhere to the contrary, Seller acknowledges, understands and agrees that its relationship with ALS is on a non-exclusive basis and that ALS may, in its discretion, at any time or from time to time, and without any liability or obligation to Seller: (i) contract with, designate, authorize, constitute or appoint one or more entities other than Seller to originate, solicit, process, underwrite, close, fund, bill, sell and/or invest in loans of any type for funding by or sale to, or as agent for and on behalf of, ALS, all of which activity may occur in all or any portion of the geographic territory in which Seller originates loans; and/or (ii) either directly or indirectly compete with Seller, either for ALS's own account or as agent for and on behalf of another, in the solicitation, processing, underwriting, closing, funding, billing, seller of and/or investing in loans in such geographic territory.

### 714 SOLICITATION FOR REFINANCING

During the remaining term of any Mortgage Loan purchased by ALS, neither Seller, nor any affiliate of Seller shall take any action personally, by telephone, mail or otherwise, to solicit the prepayment of Mortgage Loans, in whole or in part, without the prior written consent and approval of ALS.

### 715 EARLY PAYMENT DEFAULT

If a Mortgagor fails to make any two (2) of the first six (6) monthly payments ~~within thirty (30) days after such payment was due,~~ the Seller shall repurchase the loan in accordance with Section 710 herein. *THIS PROVISION SHALL NOT APPLY TO SUBPRIME LOANS NOR TO LOANS THAT HAVE BEEN PRIOR APPROVED BY ALS ir ITS CONTRACT UNDERWRITER.*

*& SUCH DEFAULT CONTINUE FOR A PERIOD OF 90 DAYS.*

### 716 EARLY PAYOFF

If a Mortgage Loan is paid in full within six (6) months of the Purchase Date,* Seller will reimburse ALS that portion of the Purchase Price in excess of par multiplied by the Unpaid Principal Balance as of the Date of payment in full, net of Prepayment charges collected.

*\* AS A RESULT OF SELLER DIRECT SOLICITATION & ORIGINATION,*

*1st payment default only*

**Section 7**

## REPRESENTATIONS, WARRANTIES AND INDEMNIFICATIONS

This page left intentionally blank.