# LEHMAN BROTHERS BANK, FSB

## LOAN PURCHASE AGREEMENT

### (SERVICING RELEASED TRANSACTIONS)

This is a LOAN PURCHASE AGREEMENT (the "Agreement"), dated as of August 8, _____, 2001, [Seller No. 7141], by and between Lehman Brothers Bank FSB, having an office at 921 North Orange Street, Wilmington, Delaware 19801 ("LBB") and Fairmount Funding LTD. having an office at 39 west 37th Street, 4th Floor, New York, NY 10018 (the "Seller").

### WITNESSETH:

WHEREAS, the Seller desires to sell, from time to time, to LBB, and LBB desires to purchase, from time to time, from the Seller, certain conventional, adjustable and/or fixed-rate residential first mortgage loans (the "Mortgage Loans") which shall be delivered on a servicing released basis, on various dates (each a "Purchasing Date") as provided in the Aurora Loan Services Inc. Seller's Guide, as amended from time to time (the "Seller's Guide");

WHEREAS, each Mortgage Loan is secured by a mortgage, deed of trust or other security instrument creating a first lien on a residential dwelling located in the jurisdiction indicated in the Delivery Commitment Confirmation for the related Mortgage Loan;

WHEREAS, LBB and the Seller have agreed that the Mortgage Loans shall be conveyed in the manner set forth in the Seller's Guide; and

WHEREAS, this Agreement is the "Loan Purchase Agreement" referred to in Section 100 of the Seller's Guide;

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, LBB and the Seller agree as follows:

SECTION 1. Agreement to Purchase. The Seller agrees to sell, and LBB agrees to purchase, from time to time, Mortgage Loans as further described in the related Purchase Advice and the related servicing rights thereto, pursuant to the terms and conditions of the Seller's Guide

SECTION 2. Incorporation of Seller's Guide; Conflicts, Seller Agreement. The terms and provisions of the Seller's Guide and all forms therein are hereby incorporated and made a part hereof and are an integral part of this Agreement. In the event of any conflict, inconsistency or discrepancy between any of the provisions of the Seller's Guide and any of the provisions of this Agreement, the provisions of this Agreement shall control and be binding upon LBB and the Seller. The Seller hereby (i) acknowledges that it has received and reviewed the Seller's Guide and (ii) agrees to be bound by the terms and conditions set forth therein.

SECTION 3. Counterparts. This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

SECTION 4. Successors and Assigns; Assignment of Loan Purchase Agreement. This Agreement shall bind and inure to the benefit of and be enforceable by the Seller and LBB and their respective successors and assigns. This Agreement shall not be assigned, pledged or hypothecated by the Seller to a third party without the consent of LBB.

SECTION 5. Defined Terms. Capitalized terms used but not defined herein shall have the respective meanings set forth in Section 8 of the Seller's Guide.

# LEHMAN BROTHERS BANK, FSB

SECTION 6. Costs. All costs and expenses incurred in connection with the transfer and delivery of the Mortgage Loans, shall be paid by the party identified in the Seller's Guide, as applicable, or if no party is identified, by the Seller.

SECTION 7. Notices. All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or, if by other means, when received by the other party at (i) the address in the Seller's Guide if to LBB, and (ii) as follows if to the Seller:

> Attn.:
> Fairmount Funding LTD.
> Arthur Dietel
> 39 west 37th Street, 4th Floor
> New York, NY 10018

or such other address as may hereafter be furnished to the other party by like notice. Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

SECTION 8. Governing Law. This Agreement and the Seller's Guide shall be construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York, except to the extent preempted by Federal law.

SECTION 9. Waivers. No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced.

SECTION 10. Reproduction of Documents This Agreement and all documents relating hereto, including, without limitation, (a) consents, waivers and modifications which may hereafter be executed, (b) documents received by any party at the closing, and (c) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process. The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

SECTION 11. Further Agreements. The Seller and LBB each agree to execute and deliver to the other such reasonable and appropriate additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of the Seller's Guide.

SECTION 12. Confidentiality. The Seller hereby agrees that the terms and conditions of any Purchase Advice, this Agreement, the Seller's Guide and all Delivery Commitments shall be kept confidential and their contents shall not be divulged to any party without LBB's consent except to the extent that it is necessary for the Seller to do so in working with legal counsel, auditors, taxing authorities or other governmental agencies.

SECTION 13. State of Incorporation. The Seller is duly organized validly existing and in good standing under the laws of the state of __NEW YORK__.

SECTION 14. Restrictions on Publicity. Without the prior written consent of ALS, Seller shall not use the corporate names, logos, brand names, trademarks, trade names or service marks of ALS, Lehman Brothers, Lehman Brothers Bank, F.S.B., or any of their respective affiliates, or otherwise identify ALS, Lehman Brothers, Lehman Brothers Bank, F.S.B., or any of their respective affiliates, in

# LEHMAN BROTHERS BANK, FSB

Seller's advertising, marketing or promotional material, publicity releases, communications with the press, customer listings, testimonials, websites, any other material distributed by or on behalf of Seller or in any proposals to prospective borrowers, brokers, clients or appraisers.

       IN WITNESS WHEREOF, the Seller and LBB have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

LEHMAN BROTHERS BANK, FSB
(Purchaser)

By: _____
Name: Bruce Brunner
Title: VP

FAIRMOUNT FUNDING LTD.

By: _____
Name: Arthur Ostro
Title: President

## ADDENDUM #1
## TO THE LOAN PURCHASE AGREEMENT

THIS ADDENDUM ("Addendum") is made this _8th_ day of _August_, 2001, by and between Lehman Brothers Bank, FSB. ("LBB") and Fairmont Funding, Ltd. ("Seller").

WHEREAS, LBB and Seller have executed that certain Loan Purchase Agreement (the "Agreement") dated the _8th_ day of _August_, 2001; and

WHEREAS, LBB and Seller wish to amend certain terms, provisions and conditions of the Agreement and the Aurora Loan Services Inc. Seller's Guide (the "Seller's Guide");

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, LBB and Seller agree as follows:

1. Capitalized terms used and not defined herein shall have their respective meanings under the Agreement.

2. With respect to the following provisions of the Seller's Guide, as incorporated into the Agreement, the following amendments shall be made:

    a) There shall be inserted in Section 703, Subsection 12, under the heading "Validity of Mortgage Documents", as the final paragraph under this heading, the following:

    "Notwithstanding the foregoing and as it relates to Mortgage Loans submitted under Purchaser's limited documentation program, where such limited documentation program requires a borrower statement of income with no further verification of such stated income, and such loans have been underwritten by Purchaser prior to purchase, Purchaser's discovery of misrepresentation of income by the borrower, for which Seller had no knowledge of or would not reasonably be expected to have known of such misrepresentation, shall not be considered an Event of Default hereunder."

    b) Section 703, Subsection 19, "No Mechanic's Lien", shall be deleted in its entirety and there shall be substituted in lieu thereof the following:

    "**No Mechanic's Lien.** To the best of Seller's knowledge, there is no mechanic's or similar lien or claim that has been filed for work, labor or material (and no rights are outstanding that are under applicable law could give rise to such a lien or claim), affecting the related Mortgaged Property, which is or may be a lien prior to, or equal with, the lien of the related Mortgage."

Addendum to Loan Purchase Agreement 
Fairmont Funding, Ltd.
August 2, 2001
Page 2 of 3

c) Section 703, Subsection 20, "Location of Improvements; No Encroachments", shall be deleted in its entirety and there shall be substituted in lieu thereof the following:

"**Location of Improvements; No Encroachments.** To the best of Seller's knowledge, (i) all improvements which are considered in determining the appraised value of the Mortgaged Property at origination lie wholly within the boundaries and building restriction lines of the Mortgage Property and no improvements on adjoining properties encroach upon the Mortgaged Property (except such encroachments as have been affirmatively insured over by the title insurer), and (ii) no improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulations."

d) Section 708, "Termination without Cause", shall be deleted in its entirety and there shall be substituted in lieu thereof the following:

"In addition to the provisions set forth elsewhere herein or in the Purchase Agreement for termination of this Seller's Guide and the Purchase Agreement, this Seller's Guide and the Purchase Agreement may be terminated without cause at any time by either party upon prior written notice of termination to the other party. The effective date of termination must be specified in such notice and must be at least sixty (60) days after the date of such written request."

e) The final paragraph of Section 710 shall be deleted in its entirety and there shall be substituted in lieu thereof the following:

"All Purchaser's remedies hereunder, including, without limitation, the repurchase obligation with respect to the Mortgage Loan, the purchase obligation with respect to the Mortgaged Property, and the indemnification with respect to any breach of a representation, warranty or covenant (or any other Event of Default), shall exist regardless of the dates of Purchaser's discovery and notice to Seller of the breach and Purchaser's demand for any remedy. Notwithstanding any other provision of the Seller's Guide or Purchase Agreement to the contrary, Seller shall remain liable for all remedies hereunder, even if Purchaser discovers a breach after the Mortgage Loan is liquidated in foreclosure."

f) Section 716, "Early Payoff", shall be deleted in its entirety and there shall be substituted in lieu thereof the following:

"If a Mortgage Loan is paid in full within three (3) months of the Purchase Date, Seller will reimburse Purchaser that portion of the Purchase Price in excess of par multiplied by the Unpaid Principal Balance as of the date of payment in full, net of Prepayment charges collected."

Addendum to Loan Purchase Agreement
Fairmont Funding, Ltd.
August 2, 2001
Page 3 of 3

Other than specifically set forth herein, the terms, provisions and conditions of the Agreement and the Seller's Guide shall remain in full force and effect.

IN WITNESS WHEREOF, the Seller and LBB have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first written above.

LEHMAN BROTHERS BANK, FSB
(Purchaser)
By: _____
Name: Bruce Brunner
Title: VP

FAIRMONT FUNDING, LTD.
(Seller)
By: _____
Name: Arthur Osrei
Title: President



# DUAL AGREEMENT AUTHORIZATION

Dear Prospective Correspondent:

In order for Lehman Brothers Bank, FSB (the "Bank") to approve your firm, the Bank will need to complete a separate approval of your correspondent application. Rather than have you complete another application containing the same information you have already supplied Aurora Loan Services Inc. ("ALS"), ALS will provide the Bank with all application, compliance, quality control reports, agency review information, insurance and other information that ALS receives from you in connection with your application to become a correspondent of ALS (the "Correspondent Application File"). Accordingly, by countersigning a copy of this letter, you (i) authorize and direct ALS to provide your Correspondent Application File to Lehman Brothers Bank, FSB, and (ii) represent, warrant, covenant and agree with ALS and the Bank as follows:

1. The information contained in the Correspondent Loan Application File was and is true, correct and complete in all material respects both as of the date such information was provided to ALS and as of the date hereof;

2. You will provide Lehman Brothers Bank, FSB, with such further information, financial data and certificates as Lehman Brothers Bank may require from time to time, in order to process your application to become a correspondent. In particular, within thirty (30) days from today, you will provide Lehman Brothers Bank, FSB, with evidence of board or other corporate or partnership authority to become a correspondent.

3. Your application to become a correspondent of Lehman Brothers Bank, FSB, and your execution and delivery of this letter and the Lehman Brothers Bank Correspondent Agreement have been duly authorized by your company, and all corporate, partnership or other action necessary for such action have been taken.

Upon your approval as a Correspondent by Lehman Brothers Bank, FSB, you will be provided with an approval letter together with a correspondent identification number for your use in the Lehman Brothers Bank Correspondent Program.

We look forward to your prompt response. Please call Bruce Brunner, Vice President, National Client Relations, Aurora Loan Services Inc. at 281-858-1778 if you would like any further information.

Very truly yours,

AURORA LOAN SERVICES, INC          LEHMAN BROTHERS BANK, FSB

Agreed, accepted and approved on this ____ day of _____, 2001.

Seller: _____

By: _____

Name: _____

Title: _____

# Independence
Community Bank

*Mortgage Warehouse Funding*

Mortgage Company: FAIRMONT FUNDING, LTD.
Investor: LEHMAN BROTHERS BANK, FSB
Date: 09/02/2004      Reference: 638336011658

Dear Correspondent Department:

The Seller has granted a security interest in the Collateral to us in accordance with our Mortgage Loan Warehousing Agreement with the Mortgage Company named above and we deliver the mortgage loan document(s) to you in bailment pursuant to a forward purchase commitment to said Mortgage Company and at the instruction of said Mortgage Company but do not assume or agree to perform any obligation to you of said Mortgage Company.

Independence Community Bank hereby conditionally tenders to you as bailee and agent for Independence Community Bank the note(s) and related file(s) for the mortgage loans described on the attached schedule.

The purchase price for all mortgage loan(s) accepted for purchase must be wired, in immediately available funds only as follows:

   Independence Community Bank
   ABA# 226071211
   Mortgage Warehouse Funding - FMON
   FAIRMONT FUNDING, LTD. - Loan Purchase Clearing Account
   Account #: 1336018112
   Re: Mortgagors Name
   Phone No.:     973-313-0870

Upon receipt of proceeds by Independence Community Bank by wire transfer as set forth above we agree that the conditions of delivery will have been satisfied and that you will be discharged of further obligation to us as bailee and agent for Independence Community Bank as to said note(s). Our security interest in such mortgage loan(s) so purchased shall automatically terminate and be canceled and released without notice or demand.

Regardless of any other indebtedness that the Mortgage Company may owe you, you acknowledge and agree that you will make no claim by way of set-off or otherwise to any Mortgage loan delivered herewith.

Unless and until you buy and pay for each loan(s) as aforesaid, Independence Community Bank shall retain a security interest therein and you shall hold possession of each loan(s) and the documentation evidencing the same as agent and bailee for and on behalf of Independence Community Bank.

In the event any of these loan(s) is unacceptable to you or if you fail to complete purchase and payment within 30 days, you as bailee and agent must return such mortgage loan(s) and its file(s) to the above letterhead address. Your retention of the documents delivered herewith shall constitute your acceptance to the terms of this letter. Should you not agree to same, you should immediately return all documents to the undersigned at the address below.

Sincerely,
Independence Community Bank

By: _____
Joann Zaleski, Mtg Whse Assistant

### Shipping Schedule

To Location: LEHM1 - LEHMAN BROTHERS BANK, FSB
Lender: ICB - Independence Community Bank
Customer: FMON - FAIRMONT FUNDING, LTD.
Ship Reference Number: 638336011658

| Collateral ID | Short Name | Orig. Face Amt. | Collateral Value | Product | Release ID | Release Date | Commitment No. |
|---|---|---|---|---|---|---|---|
| IA0066 | EDELKIND | 3,300,000.00 | 3,300,000.00 | CONV | 129503 | 9/2/2004 | IA0066 |

Total Items: 1
Shipping Totals:  3,300,000.00   3,300,000.00

By: jzaleski
rgroup: Users
pany: INDEPENDENCE COMMUNITY BANK
9
10:38:04AM
9/2/2004
W:\PROGRAM FILES\MBMS APPLICATIONS\PROMERIT\REPORTS\C107.RPT