UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | CRIMINAL NO. 04-10066-MEL |
| JAMIE EDELKIND,           defendant. | ) ) ) | |

### UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

The United States, by its undersigned counsel, submits this response to Defendant Jamie Edelkind's Sentencing Memorandum.

On the eve of sentencing, defendant Edelkind submitted a brief and various copies of appraisals of the house located at 940 Nantasket Avenue, Hull, Massachusetts, which was mortgaged as collateral for the fraudulently-obtained loans at issue in this case. The gist of defendant's submission is that, based upon the appraisals appended to his memorandum, the value of the collateral exceeds the amount of the outstanding loans, so that there is no "loss" to the victim financial institution(s).

It is the United States' position that, based upon the appraisals obtained by the victims of the offense, it is unmistakeable that there will indeed be a loss, and a substantial one at that. Moreover, given the nature of the offense at issue in this case – which turned not on falsehoods about the value of the collateral, but on a totally fictitious financial identity of the putative borrower – the weighing of culpability should focus on the magnitude of Edelkind's fraud scheme rather than on the happenstance of whether he was lucky or unlucky in the speculative real estate investment he obtained with his ill-gotten gains.

In calculating the applicable Sentencing Guidelines, which are advisory in any event (see United States v. Booker, 125 S.Ct. 738 (Jan. 12, 2005)), the United States notes that a defendant's gain from a fraud offense may serve as a proxy for measurement of loss, provided there is at least some loss. U.S.S.G. §2B1.1, comment. 3(B) ("The court shall use the gain that resulted from the offense as an alternative measure of loss only if there is a loss but it reasonably cannot be determined.").

The attached appraisal report, dated June 29, 2005, which undersigned counsel received last night, reflects a likely value for the property of $1,000,000, with a possible value of up to $2,000,000 if defects in the property can be cured. Exhibit A. Other appraisal reports, received this morning – apparently prepared at a time when the appraiser had no opportunity to enter the property and see the various code-violations and other defects noted in Exhibit A – reflect possible values as high as $2,540,000. These are attached as Exhibit B. Whether such a prices can be realized in a foreclosure sale is, of course, entirely speculative.

The short of it is that, in calculating the guidelines, the Court faces a few options: (1) The Court could convene an evidentiary hearing to wade through the various opinions of value that have been submitted, by the defendant and now by the United States; (2) The Court could accept the loss estimate offered in the Pre-Sentence Report as "a reasonable estimate of the loss," (see U.S.S.G. §2B1.1, comment. n.3.(C)); (3) The Court could properly find that there is at least some loss and base its estimate of loss upon "[m]ore general factors, such as the scope and duration of the offense and revenues generated by similar operations" (See U.S.S.G. §2B1.1, comment. n.3(C)(v); or (4) if a more precise measure of loss were required, the Court could postpone sentencing until such time as the actual sale of the property has been completed.

It is the United States' position that, because calculations of "loss" are intended in the first place as a proxy for culpability, it makes little sense – particularly in an advisory-guidelines regime – to devote undue time and resources to determining a fixed "value" for the collateral at issue, when any such figure is, at bottom, inherently speculative.

The gist of the offense is simple. Edelkind obtained net total of $3,300,000 through a continuous series of frauds, all based upon creating a fictitious borrower (a putative multi-millionaire business executive bearing the name, but no other attributes, of Edelkind's wife). Edelkind used the $3,300,000 to sustain an extravagant lifestyle for himself and his family over the course of a four-year period during which he earned no income. Fortunately, a portion of the fraudulently obtained money was put into the house, which may or may not turn out to have appreciated in value as well. Because the collateral is real, some rough estimate of the value of the collateral is properly deducted from the total amount wrongly-obtained, as the PSR sets forth. Greater precision in the calculation is neither possible nor, ultimately, necessary.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

dated: July 7, 2005

By: /s/Paul G. Levenson
PAUL G. LEVENSON
KRISTINA BARCLAY
Assistant U.S. Attorneys
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3147