## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

**UNITED STATES OF AMERICA**         )
                                            )
                                            )   **CRIMINAL NO.**
           **v.**                               )   **04 − 10066 MEL**
                                            )
**JAMIE EDELKIND**                           )
_____)

### DEFENDANT JAMIE EDELKIND'S MOTION, PURSUANT TO FRAP 10(e), TO CONFORM THE RECORD TO DISCLOSE FULLY WHAT OCCURRED IN THE DISTRICT COURT

The defendant, Jamie Edelkind ("Edelkind"), moves pursuant to FRAP 10(e)(1) and (2) to correct and/or expand the record to disclose fully what occurred in the district court with respect to its determination of the fair market value of the mortgage loan collateral − the house in Hull, Massachusetts − as a credit against loss under Application Note 3 (E)(i)and (ii) to U.S.S.G. §2B1.1(b)(1).  As more fully set forth below, it appears that the court requested that the Probation Office provide calculations based on the "middle ground" between government ($2 million) and defense ($5 million) positions on the fair market value of the house, that the Probation Office made a plainly erroneous determination of the "middle ground," and that the court unwittingly adopted the erroneous calculation.  The error created an overstatement of loss in the amount of $500,000.

Well more than seven days after the entry of the Amended Judgment, dated July 27, 2005, and in the course of reviewing the certified record on file with the Court of Appeals for the First Circuit, counsel for Edelkind

discovered a one page Memorandum, dated July 7, 2005, to the court from Ina Howard-Hogan, the United States Probation Officer who had prepared Edelkind's Presentence Report. This Memorandum (the "Howard-Hogan Memorandum") does not appear as an entry on the district court docket and neither counsel for Edelkind nor counsel for the government had been aware of its existence. A copy of the Howard-Hogan Memorandum is attached as Exhibit A.

The Howard-Hogan Memorandum purports to "[s]et forth . . . the calculations for Jaime (sic) Edelkind" with respect to determining loss and restitution amounts. A comparison of the Memorandum with the loss and restitution calculations the court announced on July 12, 2005, suggests that the Howard-Hogan Memorandum was the script for the court's ultimate calculations. Copies of the relevant pages, i.e., pages 48-50, of the Sentencing Transcript, Day 2, July 12, 2005, are attached as Exhibit B.

The opening clauses of the body of the Howard-Hogan Memorandum read:

> *"As the Government and defense counsel have submitted appraisals for the property located at 940 Nantasket Ave, in Hull, MA that are very different from each other: Gov't argues that the figure is approximately $2 million, while defense counsel argues that the figure is approximately $5 million."*

The court on July 12th opens its remarks on loss calculation almost identically −

> *"The government and defense counsel have submitted appraisals of the property at 940 Nantasket Avenue in Hull which are very different from each other. The government argues that the value of the property is approximately $2*

*million and the defendant argues that it's $5 million."* [1]

The Howard-Hogan memorandum proceeds:

> *"[A]s not exact amount of the property can be determined without the sale of the property, Judge Lasker suggest (sic) using the middle of both these figures: $3 million, from which $500,000 is subtracted for cost (sic) fixing up the property. Thus figure suggested by Judge Lasker is $2.5 million."*

The Howard-Hogan Memorandum indicates that the court suggested using the 'middle ground" between $2 and $5 million in the calculations. This is consistent with a comment made near the close of the July 7th hearing. When defense counsel proposed submitting a series of additional certified appraisals over several years by different appraisers, none of them approaching the government figures, the court responded − "We can all spend days and days trying to reach a conclusion on that. I am – I think it is fair to say that the value of the house falls between the extreme appraisals that you've both given me." Sentencing Transcript, Day 1, July 7, 2005, page 19.

The defendant has concluded, reasonably he submits, that the genesis of the Howard-Hogan Memorandum was the court's instruction to prepare loss calculations that would begin with a Hull property valuation at the middle ground between $2 million and $5 million.[2] The defendant

---

[1] Sentencing Transcript, Day 2, July 12, 2005, page 48.

[2] Edelkind's sentencing had been scheduled to take place on July 7th, but was continued by the court until July 12th because of loss calculation difficulties arising from the widely divergent property valuations the parties presented. The court needed time for reflection. "The next time it will be ten minutes. I mean we've talked through everything. It is a matter of my reflecting on this situation and doing the calculations you have asked me to do, which I do not like to do from the bench." Sentencing Transcript, Day 1, July 7, 2005, page 18. The July 12th date for completion was not established until the conclusion of the July 7th hearing. The Howard-Hogan Memorandum is dated July 7, 2005, but references the new July12th sentencing date. It was therefore prepared during the period

concludes that the court also instructed the Probation Officer to reduce the valuation by $500,000 to cover costs of putting the property into salable condition.  The Memorandum was the response to the instructions.[3] However, Probation made a major mistake in determining the "middle ground" between $2 million and $5 million.  The "middle ground" is $3.5 million, not the $3 million stated in the Memorandum.  And a $500,000 deduction from $3,500,000 leaves a $3,000,000 valuation, not a $2,500,000 valuation.

The court, in the corresponding section of its announced calculations, follows the Howard-Hogan Memorandum script but without any reference to the "middle ground" −

> *"Since an exact value of the property cannot be determined until it is sold, I have concluded that it is appropriate for this purpose today to calculate the guidelines and to value – I mean, for calculating the guidelines to value the Hull property at $3 million, for which $500,000 should be subtracted to the cost of restoring the property to salable condition.  Accordingly, for the purpose of guideline calculation, I conclude that the property should be valued at $2.5 million."[4]*

The defendant suggests that the court unwittingly adopted the erroneous "middle ground" that the Probation Officer calculated and that it thus computed a loss far greater than it intended.  The court's failure to identify its rationale of resorting to the middle ground, despite the ease of its application and its common sense appeal, is understandable because it

---

of the court's "reflecting and doing the calculations."

[3]  The alternative that the Howard-Hogan Memorandum  was  a Probation Office guideline calculation made independently and then transmitted to the court is inconsistent both with the language of  the Memorandum and the requirement that  such calculations be submitted to all parties.

[4] Sentencing Transcript, Day 2, July 12, 2005, page 48.

avoids the retort that such an approach is hardly scientific and essentially arbitrary.[5]  Had the court identified its rationale as it appears in the Howard-Hogan Memorandum, however, the arithmetical error would have been promptly noticed and likely addressed within the 7 day period permitted under Rule 35(a) of the Federal Rules of Criminal Procedure.[6]

The Howard-Hogan Memorandum contained another substantial error which the court also fully adopted.  If the house in Hull were valued at $2,500,000 as set forth in the Memorandum, that amount must be credited in accordance with Application Note 3 (E)(i)and (ii) to U.S.S.G. §2B1.1(b)(1) against the otherwise calculated guideline loss.  Accepting *arguendo* the court's conclusion that such loss was the full $3,300,000 amount of the loan, the net would be $800,000.  However, there were two other credits required under the guidelines.  One was for $1,802.55 and the other for $149,940.91. The Howard Hogan Memorandum recognizes these additional credits, but erroneously deducts them from the $2,500,000 that had just been determined to be the value of the house, concluding that the "total restitution and loss" was $2,348,256.54.  Plainly this is wrong.  All the credits should have been added together and deducted from the otherwise calculated guideline loss.[7]

---

[5] When the court suggested that "it  is fair to say that the value of the house falls somewhere between the extreme appraisals" from the two sides, defense  counsel retorted to the effect that a Solomon like cut to the middle ground disadvantaged the defendant because guideline ranges are front loaded.  Sentencing Transcript, Day 1,  July 7, 2005.
[6] Rule 35(a) provides − "Within 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error."  Because the error that now appears could not be discerned at the time the sentence was announced, it may not be corrected pursuant to Rule 35(a).  Rule 36, permitting the correction of "clerical errors" at any time is also unavailable because that Rule does not address errors by the court itself in imposing a sentence. *See, e.g.*,  *United States v. Daddino*, 5 F.3d 262, 264 (7th Cir. 1993)
[7] At page 49 of the Sentencing  Transcript, Day 2, July 12,  2005, the court concluded, erroneously, that the loss amount was between $1,000,000 and $2,500,000 and at page 50, it determined restitution in the amount of $2,348,256.54 by repeating  Probation's

The house valuation is a credit; it is not part of any loss.  Assuming again
that such loss was $3,300,000 and the house valuation was $2,500,000, the
aggregated credits would result in a loss of $648,256.54.[8]  The court,
however, followed Howard-Hogan Memorandum's error, concluding that
"the loss amount is more than $1 million, . . . but  less than $2.5 million,"[9]
and calculating a restitution total of $2,348,256.54 by deducting the two
additional credits ($1,802.55 and $149,940.91) from the $2,500,000 property
valuation.[10]

 This error fully appears in the current record, was apparent at the time
sentence was announced and was noted by defense counsel.[11]  However, the
$500,000 error in calculating the middle ground that clearly appears in the
Howard-Hogan Memorandum and that was apparently unintentionally
adopted in the court's calculation of guideline losses announced in the
course of sentencing on July 12, 2005, does not appear in the current record
and has never been addressed.

 It is too late to invoke F.R.Crim.P. 35(a) and correct the sentence for

---

erroneous deductions of the additional credits from the Hull property valuation rather
than from the amount of the loan. This restitution figure was abandoned in the Amended
Judgment.

[8] Of course, if the $500,000 error were also taken into account the loss would be $148,
256.54.

[9] Sentencing Memorandum, Day 2, July 12, 2005, page 49.  A loss calculation of over $1
million but less than $2.5 million would produce an offense level of 23 under
§2B1.1(b)(1)(I). A $648,256.54 loss would produce a guideline offense level of 21 under
§2B1.1(b)(1)(H).  A $148,256.54 loss would produce a guideline offense level of 17
under §2B1.1(b)(1)(F).  The court, however, also applied §2B1.1(b)13, concluding that
Edelkind derived more than $1,000,000 from his fraud.  Applied to the three loss
calculations, this guideline section produces, respectively, guideline offense levels of 25,
24 and 24.

[10] Sentencing Memorandum, Day 2, July 12, 2005, page 50.

[11] Sentencing Transcript, Day 2, July 12, 2005, pages 54 and 55.  The Amended Judgment
does not include the court's erroneous guideline calculations, but only the ultimate
sentence of 60 months.

arithmetical error and F.R.Crim.P. 36, permitting the correction of clerical errors, does not apply to errors by the court in the course of sentencing a defendant.[12]  FRAP 10(e), however, permits the district court to clarify the record so that it truly discloses what occurred in the proceedings before it. The Howard-Hogan Memorandum states that it was the court's suggestion to take the middle ground between $2 million and $5 million.  Whether or not such an approach is arguably arbitrary and unscientific, it is not entirely random and it has the advantage of reflecting an attempt to achieve a fair and equitable balance in the face of unyielding uncertainty.  The middle ground, however, is plainly $3.5 million, not $3 million.  The deduction of an additional $500,000 to put the house in salable condition leaves a $3,000,000 valuation, not a $2,500,000 valuation.

The error, if unwittingly adopted by the court, is of substantial consequence.  It increases guideline loss by $500,000.[13]  If the court intended to take the middle ground and unintentionally adopted the erroneous calculation provided by the Probation office, the record on appeal should reveal that fact.

Believing that a hearing on this motion would be helpful to the court, the defendant requests a hearing.

---

[12]  See note 6, *supra*.

[13] The defendant has challenged the court's determination that Edelkind obtained more than $1,000,000 in gross proceeds from his fraud and the consequent application of §2B1.1(b)(13).  If successful in that challenge, the error in loss calculation that the Howard-Hogan Memorandum suggests becomes critical.  Instead of a minimum offense level of 24, Edelkind's offense level would be reduced to level 17.  See note 9.

JAMIE EDELKIND

By his attorney,

s/ Michael J. Liston

_____
Michael J. Liston BBO# 301760
2 Park Plaza, Suite 610
Boston,  MA  02116
(617) 426-2281

December 14, 2005