UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 04-10066-MEL |
| ) | |
| JAMES EDELKIND, ) | |
| ) | |
| defendant. ) | |

### UNITED STATES' RESPONSE TO PRO SE REQUEST FOR RECUSAL

The United States, by its undersigned counsel, responds as follows to the pro se submissions of defendant Jamie Edelkind regarding his request that the presiding Judge in this case be recused. As discussed below, the Court can and should simply strike such pro se submissions by a represented party. Even if they were properly before the Court, moreover, the submissions are patently without merit. Nor is there any need to indulge defendant's request for a hearing when his submissions fail to raise any genuine issue of material fact.

1.  Defendant's Pro Se Submissions Should Be Stricken

The Court has accepted defendant's claim of present indigency and defendant has been provided, at taxpayer expense, the services of able and zealous counsel. At no time has defendant asked that his court-appointed counsel be removed or that he be permitted to proceed pro se. On the contrary, based upon the continued filing of submissions in both this Court and in the Court of Appeals, it is plain that defendant's appointed counsel, Michael Liston, continues to represent the defendant. At no time has defendant suggested that he wishes to proceed pro se.

Having ensured that defendant is properly represented by counsel, the Court is not required to countenance the continued filing of scurrilous pro se submissions by defendant himself. The controlling principle is well-settled in the First Circuit:

> An indigent defendant has a sixth amendment right to appointed counsel, and a corresponding right to proceed without counsel, but these are mutually exclusive. A defendant has no right to hybrid representation. That is not to say that hybrid

representation is foreclosed; rather, it is to be employed sparingly and, as a rule, is available only in the district court's discretion.

United States v. Nivica, 887 F.2d 1110, 1121 (1st Cir.1989) (citations omitted).

Defendant's appointed counsel has shown great zeal in vindicating defendant's rights addressing a broad range of issues, in this Court and in preparing the record for the Court of Appeals. It is evident that defendant's pro se filings have not been screened by his counsel and they most certainly have not been adopted by counsel. As such they are properly stricken from the docket and treated as nullities. Unless and until defendant's counsel sees fit to file an appropriate motion, the Court need not reach the substance of defendant's pro se filings.

In a recently reported decision the First Circuit addressed a situation, not unlike the matter at bar, in which a represented defendant had advanced, pro se, a challenge to the composition of the jury pool. In affirming the decision of the district court to strike the pro se submission, the First Circuit reiterated the ruling in Nivica that "defendant has a sixth amendment right to appointed counsel, and a corresponding right to proceed without counsel, but these are mutually exclusive." United States v. Washington, 434 F.3d 7, 16 (1st Cir. 2006). Accordingly, the Court ruled, "[i]n this case, the district court was not required to accept Washington's pro se motion at all. The court acted within its discretion in striking the motion." Id. In particular, the Court noted that while defense counsel in Washington had delivered the pro se submission to the district court as an accommodation to his client, "Counsel's refusal to file the objection as counsel of record no doubt reflected an assessment of counsel's ethical responsibilities not to file unsupported motions." Id.

    2.    <u>Defendant's Pro Se Recusal Demand is Without Merit</u>

        a.    <u>Legal Standards Governing Recusal</u>

There are two statutes which govern recusal of federal district judges on the grounds of bias, prejudice, or lack of impartiality. These are Title 28 United States Code Section 144 and Section 455.

Section 144 provides:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C.A. § 144.

Section 455 provides, in pertinent part:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding ....

The purpose of these disqualification statutes is to guard against personal, extrajudicial bias or the appearance of partiality arising out of such bias. In Re: Marisol Martínez Cátala, 129 F.3d 213 (1st Cir. 1997). Under either section 144 or section 455(b)(1) the alleged bias or prejudice must be personal as distinguished from judicial in nature. In re Cooper, 821 F.2d 833 (1st Cir. 1987); United States v. Kelley, 712 F.2d 884, 889-90 (1st Cir. 1983). "The point of the distinction is that the bias must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." Phillips v. Joint Legislative Comm., 637 F.2d 1014, 1019 (5th Cir. 1981).

Properly filed, timely affidavits under Section 144 require the designation of another judge to weigh the appropriateness of recusal. Under Section 455(a), by contrast, it is the duty of

the presiding judge, rather than another judge, to decide whether his disqualification is required.

See In re Martinez-Catala, 129 F. 3d 213, 220 (1st Cir. 1997). As the First Circuit has explained:

> It might seem odd that recusal issues should be decided by the very judge whose recusal is in question. But there are other considerations at work, including a desire for expedition and a concern to discourage judge shopping.

Id.

Under Section 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." "The case law fleshes out the bare-bone words of the statute." United States v. Voccola, 99 F.3d 37, 42 (1st Cir. 1996). "The test in [the First Circuit] for determining whether a judge's impartiality might reasonably be questioned is long established." Id. It is:

> "[w]hether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself or even necessarily in the mind of the litigant filing the motion under 28 U.S.C. § 455, but rather in the mind of the reasonable man."

Id. (quoting United States v. Cowden, 545 F.2d 257, 265 (1st Cir.1976) (emphasis added). Thus, the disqualification issue must be analyzed from the perspective of " 'an objective, knowledgeable member of the public.' " El Fenix de Puerto Rico v. M/Y Johanny, 36 F.3d 136, 141 (1st Cir. 1994).

The First Circuit's case law makes clear that a judge not only need not recuse himself when there is no legitimate charge of partiality or its objective appearance, but a judge has a duty to deny a motion for recusal in such situations.

> [J]udges are not to recuse themselves lightly under § 455(a) . . . [T]he unnecessary transfer of a case from one judge to another is inherently inefficient and delays the administration of justice. See Camacho v. Autoridad de Telefonos de Puerto Rico, 868 F.2d 482, 491 (1st Cir. 1989) (noting that the judicial system would be "paralyzed" were standards for recusal too low). For these reasons, " [a] trial judge must hear cases unless [there is] some reasonable factual basis to doubt the impartiality or fairness of the tribunal." Blizard v. Frechette, 601 F.2d 1217, 1221 (1st Cir. 1979). Thus, under § 455(a) a judge has a duty to recuse himself if his impartiality can reasonably be questioned; but otherwise, he has a duty to sit.

United States v. Snyder, 235 F.3d 42, 45-46 (1st Cir. 2000).

In particular, the First Circuit has pointed out that a low standard for recusal would allow litigants to engage in a form of judge-shopping:

> [R]ecusal on demand would put too large a club in the hands of litigants and lawyers, enabling them to veto the assignment of judges for no good reason. Thus, compulsory recusal must require more than subjective fears, unsupported accusations, or unfounded surmise.

In re United States, 158 F.3d at 30 (1st Cir. 1998). One of the policies underlying § 455(a) is the recognition that "recusal on demand would provide litigants with a veto against unwanted judges." In re: Boston's Children First, 244 F.3d 164, 167 (1st Cir. 2001). Further, "there is 'the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking.' " F.D.I.C. v. Sweeney, 136 F.3d 216, 220 (1st Cir. 1998).

  b.  <u>Application of Legal Standards</u>

It is obvious that defendant's <u>pro se</u> submissions do not comport with the requirements of Section 144. Defendant first advanced his recusal claims in September 2005, after the conclusion of trial and after his sentencing. By no stretch of the imagination can such a recusal demand be deemed "timely" in light of the Section 144's requirement that it "shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time." Nor are any of defendant's pro se submissions "accompanied by a certificate of counsel of record stating that it is made in good faith," as required by the statute. It is thus obvious that this case does <u>not</u> fall within the ambit of Section 144 and it is not subject to the provisions of that statute for assignment to another judge.

As for defendant's allegations of bias or partiality, even a brief review of his primary submission, dated August 29, 2005, reflects that his complaints are not based on any serious allegation of extra-judicial influence. Rather, he catalogues a laundry list of putative legal errors in rulings with which he disagrees. This is hardly the stuff of recusal. It is not surprising that a felon who has been sentenced to a long prison term, as defendant has, might attempt to find fault in the jurist who imposed that sentence. In an adversary system it is to be expected that at least

5

one party will be disappointed with the outcome -- and many subsidiary rulings as well -- in any given case. But the appropriate avenue for determining if a litigant's complaints have merit is through an appeal, not through an <u>ad personam</u> attack on the sitting judge.

Defendant asserts in his letter to the Clerk of Court, dated August 29, 2005, that "Mr. [sic] Lasker has also deliberately with held [sic] from me and from the record a disclosure of a personal relationship with a putative victim in my undrlying [sic] criminal case." This may allude to the fact that the presiding Judge announced during trial that an individual, Eliot Wales, was "an old friend. Tr. Mar. 2, 2005 at 97. Wales represented Fairmont Funding Ltd., the non-bank lender that originated one of the fraudulently obtained loans that were at issue. Defendant omits to mention that the trial judge expressly informed the parties of his friendship with Mr. Wales in open Court and notified the parties of his intention to have lunch with Mr. Wales during one mid-day break in the course of the trial. Both parties, by their respective counsel, expressly waived any objection to such contact between the trial judge and Mr. Wales. It is too late, after trial and after sentencing, to revisit this issue, which was promptly and appropriately addressed.

Nor, finally, is there any need to convene a hearing in this matter. Even if there were a proper pleading before the Court, there plainly is no genuine issue of material fact that would warrant convening a hearing. As the First Circuit has noted, "The test for granting an evidentiary hearing in a criminal case should be substantive: did the defendant make a sufficient threshold showing that material facts were in doubt or dispute?" <u>United States v. Panitz</u>, 907 F.2d 1267 1273 -1274 (1st Cir. 1990) (citations omitted). The decision whether to convene an evidentiary hearing is entrusted to the Court, not to the whim of a <u>pro se</u> defendant:

> A criminal defendant, after all, is not entitled to an evidentiary hearing upon demand. <u>See</u>, e.g., <u>United States v. Romolo</u>, 937 F.2d 20, 25 (1st Cir.1991); <u>United States v. Panitz</u>, 907 F.2d 1267, 1273 (1st Cir.1990); see also <u>United States v. DeCologero</u>, 821 F.2d 39, 44 (1st Cir.1987) ("hearings cannot be convened at the whim of a suitor, made available like popsicles in July, just because a passerby would like to have one").

<u>United States v. Garcia</u>, 954 F.2d 12, 19 (1st Cir. 1992).

CONCLUSION

In short, defendant's pro se screed is not properly before the Court and may appropriately be stricken, raises no genuine issue that would warrant recusal, and does not warrant a hearing.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

dated: March 9, 2006

By: /s/ Paul G. Levenson
PAUL G. LEVENSON
Assistant U.S. Attorney
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3147

**CERTIFICATE OF SERVICE**

I, Paul G. Levenson, Assistant United States Attorney, do hereby certify that this document, filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non registered participants on this date.

/s/ Paul G. Levenson
PAUL G. LEVENSON
Assistant U.S. Attorney